2007 WY 135

**In the Matter of the GUARDIANSHIP of BJO, AKA, and LM,**

**WRB and GB, Appellants (Petitioners),**

v.

**GS, MO, GA, and RM, Appellees (Respondents).**

No. C–07–1.

Supreme Court of Wyoming.

Aug. 23, 2007.

Representing Appellants: DaNece Day of Lubnau & Bailey, P.C., Gillette, Wyoming.

Representing Appellee: Mo (Father), pro se.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Appellants are the maternal grandparents (hereafter "Grandparents," WRB and GB in the caption) of the child at issue in this matter (hereafter "Child," BJO in the caption).   Grandparents petitioned the district court to appoint them as guardians of Child.   Child's father (hereafter "Father," MO in the caption) objected.   The district court declined to grant the petition and Grandparents appeal.   We will affirm.

## ISSUES

[¶ 2]   Grandparents raise these issues:

A.   Did the trial court commit reversible error by prospectively applying holdings of a Supreme Court case which was issued while this matter was under advisement?

B.   Did the trial court abuse its discretion by failing to find [Father] an unfit parent?

C.   Did the trial court abuse its discretion by failing to grant a guardianship for one child in a sibling group?

## FACTS AND PROCEEDINGS

[¶ 3]   The Grandparents' daughter is the Mother (RM in the caption) of the three children.   Each of the three children has a different father.   Only the Child we have identified above is the subject of this appeal.   She was born on July 3, 1996.   The other two children (AKA and LM in the caption) figure peripherally in this case only because of the third issue listed immediately above.   Mother had primary custody of the children and Father had visitation with the Child, as ordered by the district court in other unrelated proceedings.   Although it is not crystal clear in this record, for purposes of our disposition of this appeal we will assume that Mother had consented to her parents being the guardians of her children, to the extent her parental rights are concerned.   The children are in the actual physical custody of the Grandparents because the district court entered an order to that effect, in neglect proceedings precipitated by Mother's conduct.   Although the Grandparents were given actual physical custody of the children, that custody was made subject to Father's visitation rights established in a 2001 child custody/vis-

itation/support order.   The Grandparents' principal complaint was that Father exercised his visitation in accordance with the visitation provisions of the district court's order, but to the detriment of the Child's education.   So far as the record demonstrates, the district court was not asked to modify visitation.

[¶ 4]   On June 16, 2005, the Grandparents filed their petition for appointment of guardians.   The petition was premised on the basis that Child was a minor and that the circumstances showed that the best interests of the Child necessitated the appointment of a guardian.   Wyo. Stat. Ann. § 3–2–101(a)(ii) and (v) (LexisNexis 2007).   The *necessity* for the appointment of a guardian must be proved by a preponderance of the evidence.   Wyo. Stat. Ann. § 3–2–104(a) (LexisNexis 2007) (emphasis added).

[¶ 5]   The Grandparents asserted that the children were placed in their custody by an order of the district court because the children were neglected while in their Mother's custody.   That order is not in the record on appeal, although it is attached to the Grandparents' brief.   We will take notice of it in connection with this appeal because it is evident that the district court took notice of its prior orders in its disposition of this case.   In their petition, the Grandparents also alleged:

7.   The circumstances surrounding the parents and children are such that the fathers and mother are presently unable to provide adequate care of the minor children as the children have been subjected to and/or witnessed continuing neglect in their mother's home.   It is contrary to the best interest of the children to be separated from one another during the pendency of the juvenile case.

8.   The proposed Guardians and Petitioners herein have a loving and caring relationship with the children and can provide stability and security for the children during the pendency of the juvenile court action.   Further, Petitioners have and will work with the children and their parents to maintain their relationships with one another.

9. It is in the children's best interests that the maternal grandparents be appointed Guardians of the minor children.

10. The proposed Guardians and Petitioners herein are willing to and capable of providing for the best interests of the minor children and for their care, comfort and welfare.

[¶ 6] Appearing *pro se*, Father answered the petition and denied all of the allegations contained in it. The record contains a letter from Mother to her parents' attorney stating:

I am writing in regards to [Grandparents] requesting guardianship of my children [naming all three]. I would like the court to understand that I do not want my children split up and agree to their request for this reason while my children are not with me. It would be real appreciated if the judge would set a hearing on this. Thank you.

[¶ 7] A hearing was held on the petition on May 1, 2006. The only parent who appeared at that hearing was the Father of the Child directly at issue in this appeal. Mother did not appear and the attorney for the Grandparents asserted that she had consented to the guardianship "especially by her nonappearance today." As noted above, a letter from Mother is included in the record on appeal but it is an informal document and cannot be viewed as "consent," or as "evidence" for that matter, as those terms are used by Grandparents' attorney. It is not an issue in this appeal whether Mother had, or had not, consented to the guardianship. At the hearing, the Grandparents endeavored to prove the necessity for the guardianship, but noted:

It is our position that this guardianship does not affect [Father's] parental rights, but it is necessary to provide security and stability for [Child] that is particularly necessary in light of the educational needs that the Court's going to hear about today, and the fact that those needs will best be met by her remaining in a guardianship with her grandparents.

[¶ 8] The Grandparents called Tami Bishop, the Child's third grade teacher, as a witness. The Child attended school in Rozet. She related that the Child had a learning disability, especially with respect to written language and reading comprehension, and that Father's visitation tended to interfere with the Child's educational processes.

[¶ 9] The Grandparents also called as a witness Robert O'Neil, a Gillette attorney who served as the Child's guardian ad litem in the juvenile court proceedings related to the neglect allegations. He spoke highly of Father's efforts to complete parenting classes and of his involvement, as a parent, with his Child. Mr. O'Neil did say he thought it would be important to keep the three children together, as siblings.

[¶ 10] Both Grandparents testified relating their concerns about Father's visitation with Child, how it tended to interfere with her schooling, and giving their opinions about Father's fitness.

[¶ 11] Father testified in his own behalf.

## DISCUSSION

[¶ 12] It is difficult to articulate a standard of review for the issues presented to us in this appeal. However, we will begin by noting that the Grandparents' contention that the district court erred by retrospectively applying our decision, *In re Guardianship of MEO*, 2006 WY 87, ¶¶ 41–57, 138 P.3d 1145, 1157–61 (Wyo.2006), to the circumstances of this case, is mistaken. MEO collected and catalogued many of the most important Wyoming and Federal court decisions that apply to circumstances such as those presented here. However, so as far as we are concerned in this case, it did not announce a new rule to which the concept of retrospective or prospective application is pertinent. Also see *Wild v. Adrian*, 2007 WY 61, ¶ 15, 155 P.3d 1036, 1040 (Wyo.2007).

[¶ 13] The district court was not presented with the issue of whether Father was a "fit" parent. On appeal, the Grandparents lament that they did not focus more on his unfitness in their presentation of evidence, because if they had, they would surely have been successful. The focus of their evidence was on what they viewed as the "best interests of the child." Grandparents contend they were misled into believing that the only

issue was the "best interests of the child." Of course, the focus of a hearing such as that had in this case, as set out in the governing statute, is the "necessity" for a guardianship being established in the first instance. One aspect of the *MEO* case was to articulate the time-honored principle that a child with a living parent does not need a guardian, unless that parent is demonstrably unfit. None of the materials contained in this record suggest that Father is "unfit," but of even more fundamental importance his "fitness" was not clearly posed as an issue for the district court to decide.

[¶ 14] Finally, the Grandparents contend that the district court erred in making them guardians of two of the three children, but not the Child at issue here, because it offends our generally accepted rule that sibling groups should not be separated. In *Aragon v. Aragon*, 2005 WY 5, ¶¶ 23–26, 104 P.3d 756, 763–64 (Wyo.2005) we held:

> Finally, Mother argues that the district court erred by awarding Father custody of the children, thereby splitting the children from their half siblings and stepsibling. According to Mother, the case of *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo.1993), stands for the proposition that separating siblings through custody awards to different parents is not preferred. Mother contends that this rule of law should apply to half siblings and stepsiblings, as well as full siblings. Mother also asserts that the district court failed to adequately state the factors upon which it relied and the evidence that supported its decision as required by our decision in *Pace [v. Pace*, 2001 WY 43, 22 P.3d 861 (Wyo.2001)], which provides at ¶ 17 (footnote omitted):
>
> > As future guidance to the trial courts, we hold that, when the exercise of its discretion in custody matters involves splitting custody of children between parents or other unconventional custody approaches, the trial court must provide an explanation of its reasoning and place its findings on the record. A reasoned explanation and an expression of findings of a trial court's conclusion will assure this court that a comprehensive

evaluation of all relevant factors occurred prior to the award of custody.

> Thus, Mother asserts that, at a minimum, this matter must be remanded to the district court for an elaboration of such factors.
>
> A reading of our opinion in *Dowdy* does indicate that generally speaking the separating of siblings through custody awards to different parents is not preferred. Keeping siblings together in the same household is considered the better practice. However, this court clarified that the effect of separating siblings from each other is just one of several factors courts consider in determining the primary issue-the best interests of the children. *Dowdy*, at 440 (citing Jay M. Zitter, Annotation, *Child Custody: Separating Children by Custody Awards to Different Parents— Post–1975 Cases*, 67 A.L.R.4th 354, § 2[a], 1989 WL 571744 (1989) and *In re Marriage of Barnthouse*, 765 P.2d 610 (Colo. App.1988)). In other cases we have consistently taken this position. See *Reavis [v. Reavis]*, [955 P.2d 428] at 431 [(Wyo.1998)], *Rogers v. Rogers*, 973 P.2d 1118, 1121 (Wyo.1999), and *Pace*, at ¶ 11. We have instructed trial courts to be explicit in placing on the record the reasons supporting its determination to separate siblings so as to assure that a comprehensive evaluation of all relevant factors occurred prior to the award of custody. We have additionally admonished trial counsel that they cannot remain passive and must assist the trial judge in articulating on the record the relevant factors and their relative weight which, in the lawyer's professional judgment, should act as a foundation for the trial court's exercise of judicial discretion. *Pace*, at ¶ 18. The standards as enunciated within both *Dowdy* and *Pace* remain valid and applicable, but we emphasize that these standards must be applied within their full context as specifically identified.
>
> Further while we do not expressly adopt such holdings, we find upon our review of established foreign case authority that other jurisdictions are essentially in accord with the standards established in *Dowdy* and *Pace*. Although we acknowledge that there is somewhat of a split of authority in

the weight to be given to sibling relationships in custody determinations, all jurisdictions we reviewed agree that the paramount focus in determining who should be given custody of a child is what outcome would optimally serve the best interest of each child. That said, some jurisdictions recognize that sufficient circumstances, looking at the totality of the situation with the best interest of the child being the paramount concern, must exist before siblings are separated. See *Miers v. Miers*, 53 S.W.3d 592, 596 (Mo.App.2001); *Viamonte v. Viamonte*, 131 Md.App. 151, 748 A.2d 493, 496–99 (2000); *Mayer v. Mayer*, 397 N.W.2d 638, 644–45 (S.D.1986). Other jurisdictions reserve a higher "exceptional circumstances" standard only if the contemplated separation involves full siblings. See *Eaton v. Dixon*, 69 Ark.App. 9, 9 S.W.3d 535, 537 (2000).

Moreover, we find the strong public policy toward preservation of sibling relationships to be equally applicable whether the children are full sibling, half sibling, or stepsiblings. As recognized in Atkinson, *Modern Child Custody Practice*, § 4–17 (2d ed.2004), a recurrent theme in custody cases is the importance of keeping siblings together because close familial relationships are much to be encouraged, brothers and sisters need each other's strengths and association in those everyday and often common experiences; separating them unnecessarily is likely to be traumatic and harmful. In addition, brothers and sisters may particularly need each other's support to cope with the strain of their parents' divorce. This same treatise further notes that the presumption of keeping children together has been applied by many courts in cases where children have only one parent in common, i.e., brothers and sisters who were born of a parent's prior or subsequent marriage. *Id.* Thus, we hold that our established standards enunciated in *Dowdy* and *Pace* are applicable for all siblings regardless of their nature.

[¶ 15]   We do not retreat from anything we said in Aragon. However, we note that the district court's order does not implicate the separation of siblings as contemplated by that body of law.

## CONCLUSION

[¶ 16]   The issue presented to the district court in this case was whether a guardianship was necessary for the Child. The district court determined it was not necessary. That decision is not challenged in this appeal. The provision of the district court's order which denied Grandparents' petition to be appointed the guardians of the Child is affirmed.