2009 WY 106

**In the Interest of DMW and ALW, minors, AW and LW, Appellants (Respondents),**

v.

**TLW, Appellee (Petitioner).**

No. S–08–0217.

Supreme Court of Wyoming.

Aug. 24, 2009.

Representing Appellants: W. Keith Goody, Cougar, Washington.

Representing Appellee: Douglas F. Schultz and James K. Lubing, of James K. Lubing Law Office, Jackson, Wyoming. Argument by Mr. Schultz.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] AW and LW (Grandparents) appeal from the district court's order granting permanent guardianship and conservatorship [1] of DMW and ALW (the Boys) to TLW (Stepmother). Grandparents claim that they were not provided proper notice of, or an opportunity to be heard on, Stepmother's petition for temporary guardianship, the district court erred by failing to give priority to Grandparents as guardians for the Boys based upon Father's written statement giving the grandfather custody of them, and the district court did not act in the Boys' best interests when it awarded guardianship to Stepmother.

[¶ 2] We affirm.

## ISSUE

[¶ 3] Grandparents identify a single vague issue on appeal:

> Did the District Court err when it awarded permanent guardianship and conservatorship of DMW and AL[W] to the stepmother, TLW, rather than the paternal grandparents, AW and LW?

Stepmother does not present a separate statement of the issues.

## FACTS

[¶ 4] DMW is a male child who is now almost 9 years old. ALW is a male child who is now about 7 years old. Their parents, JW (Father) and HS (Biological Mother), were never married. Until 2005, Biological Mother had custody of the Boys and they lived in Ohio. In the summer of 2005, facing an action by the Ohio family services agency because of violence in the home, Biological Mother agreed that the Boys could live with Father. At that time, Father and Stepmother were living together in Ohio, although they did not marry until January of 2006. Stepmother also had custody of a daughter from a previous relationship (Stepsister). After moving in with Father and Stepmother, the Boys began counseling.

[¶ 5] In the spring of 2006, Father, Stepmother, Stepsister, and the Boys moved to Thermopolis, where Father had secured a job. Shortly after the move, the Boys began counseling with Hot Springs County Counseling Services. They also attended school in Thermopolis.

[¶ 6] In 2007, Stepmother engaged in an extra-marital affair. Upon learning of the

---

1. Grandparents do not make a direct challenge to the district court's order appointing Stepmother as conservator for the Boys. When we were presented with a similar situation in *KO v. LDH* (*In re Guardianship of MEO*), 2006 WY 87, ¶ 6, n. 3, 138 P.3d 1145, 1148, n. 3 (Wyo.2006), we limited our decision to the guardianship issues. We will follow the same approach here.

affair, Father and the Boys returned to Ohio on July 3, 2007, where they stayed with Grandparents. On July 18, 2007, Father was killed in an automobile accident. The Boys were not involved in the accident, as they were with Grandparents at that time.

[¶ 7]   On July 19, 2007, Stepmother petitioned for temporary and permanent guardianship of the Boys. After an ex parte conference with Stepmother and her counsel, the district court awarded Stepmother temporary guardianship of the Boys. Stepmother filed the Wyoming order in Ohio. She traveled to Ohio to attend services for Father and pick up the Boys. She and the Boys returned to Wyoming, and they have since been in Stepmother's custody.

[¶ 8]   Biological Mother and Grandparents were formally served with the guardianship documents on August 10, 2007, and given notice that a hearing on Stepmother's guardianship petition would be held on September 28, 2007.   Biological Mother filed a motion to terminate Stepmother's temporary guardianship of the Boys, and Grandparents filed a motion to intervene, seeking to be appointed as co-guardians of the Boys. The district court heard evidence on the pending motions at the September 28th hearing; however, the parties did not finish with their case presentations that day, and the hearing was continued until April 17 and 18, 2008.   In the meantime, a guardian ad litem (GAL) was appointed.

[¶ 9]   After the hearing concluded in April 2008, the district court issued a decision letter and order including detailed findings of fact and conclusions of law.   The district court ruled that Biological Mother was not fit to parent the Boys and, consequently, a guardian needed to be appointed.   The district court concluded that it was in the Boys' best interests to appoint Stepmother as their guardian.   Biological Mother did not appeal the district court's order, but Grandparents did.

## STANDARD OF REVIEW

[¶ 10]   The standard of review for guardianship cases was well stated in *KO v. LDH (In re Guardianship of MEO )*, 2006 WY 87, ¶ 17, 138 P.3d 1145, 1150 (Wyo.2006) (citations omitted):

> We presume the district court's findings of fact are correct and will not set them aside unless the findings are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence.   Additionally, we review a district court's conclusions of law *de novo*.   *Id.* Construction of the guardianship statutes involves a question of law which we review *de novo*.

A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Estate of Thomas*, 2009 WY 10, ¶ 6, 199 P.3d 1090, 1093 (Wyo.2009) (quoting *Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006)).

## DISCUSSION

### 1.   *Due Process*

[¶ 11]   Guardianship matters are controlled exclusively by statute.   *MEO*, ¶ 18, 138 P.3d at 1150.   Grandparents cite to Wyo. Stat. Ann. § 3–2–102(a) and (b) and § 3–2–106 in support of their contention that they did not receive proper notice or an opportunity to be heard prior to entry of the temporary guardianship. Section 3–2–102 states in relevant part:

> (a) Notice of filing of a petition for appointment of an involuntary guardianship shall be served on the proposed ward, his custodian and the proposed guardian.

> (b) Notice of filing of a petition for appointment of an involuntary guardianship shall be served on the proposed ward's parents, spouse and adult children who are known or who can be discovered with due diligence[.]

Wyo. Stat. Ann. § 3–2–102(a)(b) (LexisNexis 2009).

[¶ 12]   Section 3–2–102 does not specifically apply to temporary guardianships.   Moreover, it does not state that grandparents per se are entitled to notice of a petition for guardianship of their grandchildren.   Grandparents claim that they were entitled to no-

tice in this case because they were the Boys' custodians after Father died. The district court did not specifically find that they were the Boys' custodians, or make any explicit findings about their right to notice of the guardianship proceeding. At any rate, because Grandparents were given notice of Stepmother's petition for guardianship, that provision was satisfied.

■ [¶ 13]   Unlike § 3–2–102, Wyo. Stat. Ann. § 3–2–106 (LexisNexis 2009) specifically applies to temporary guardianships. Section 3–2–106 states in relevant part:

> § 3–2–106. Appointment of a temporary or emergency guardian.
>
> (a) Upon the filing of a petition for a temporary guardian other than a petition for temporary guardianship for educational, medical care and dental care purposes pursuant to W.S. 3–2–301 through 3–2–303 and after a hearing the court may appoint a temporary guardian subject to any notice and conditions the court prescribes.

That provision does not specify notice requirements, but instead, allows the district court to prescribe "any notice and conditions." The provision does state, however, that a temporary guardian will be appointed "after a hearing." In *MEO* we ruled that, in the context of an involuntary guardianship of a minor, the "after the hearing" language in § 3–2–106(a) cannot be satisfied by the district court's review of the petition in an ex parte conference. *Id.* at ¶ 37, 138 P.3d at 1156. Because it does not appear that a hearing was held in this case, that provision was not satisfied.

■ [¶ 14]   Grandparents argue that, under our decision in *MEO,* a shadow was cast upon Stepmother's appointment because the statutory provisions for temporary guardianship were not followed. *MEO* involved a case where the grandparents obtained temporary and permanent guardianship of their granddaughter. MEO's mother claimed that she was not given proper notice or an opportunity to be heard before the grandparents were granted temporary guardianship of her

daughter. *Id.,* ¶ 11, 138 P.3d at 1149. We agreed, ruling that a guardianship established over the parent's objection implicates the fundamental right to familial association between a parent and child. *Id.,* ¶¶ 20–21, 138 P.3d at 1152. Because the grandparents gained temporary guardianship of MEO after an ex parte request to the district court without giving the mother notice or an opportunity to be heard, we ruled that the mother's due process rights were violated. We explained:

> The district court erred in appointing [the][g]randparents temporary guardians of MEO without adherence to the statutory requirements regarding notice and a hearing. Without affording [the mother] proper notice and an opportunity to be heard, the district court's establishment of the temporary guardianship lacked "fundamental fairness." These procedural defects cast a shadow over the permanent guardianship as well.

*MEO,* ¶ 40, 138 P.3d at 1157.

■ [¶ 15]   In arguing that *MEO* governs their rights, Grandparents attempt to lump their rights in with Biological Mother's. Biological Mother did not, however, appeal from the district court's order, and Grandparents do not have standing to assert her position. See generally, *TF v. State of Wyoming, Department of Family Services (In re Adoption of CF)*, 2005 WY 118, 120 P.3d 992 (Wyo. 2005) (issue belonging to grandfather/intervenor in adoption proceeding could not be raised by biological mother on appeal). Moreover, they do not cite to any authority stating that grandparents have the same fundamental rights as parents to notice and an opportunity to be heard before a temporary guardianship may be established. Thus, while it is true that the district court should have held a hearing prior to appointment of Stepmother as temporary guardian of the Boys, Grandparents have not shown that they had a right to notice of the petition or to attend a hearing prior to appointment of a temporary guardian.[2]

---

2. Stepmother argues that the ex parte hearing without notice to Grandparents was appropriate under Wyo. Stat. Ann. § 3–2–302. That section provides for appointment of a child's caregiver

as temporary guardian for educational, medical and dental care purposes. Pursuant to subsection (b) of the statute,

### 2. Best Interests of Children

■ [¶ 16] Under Wyoming's guardianship statutes, the district court may appoint a guardian for a proposed minor ward when the "necessity for the appointment of a guardian" has been "prove[n] by a preponderance of the evidence." Wyo. Stat. Ann. § 3–2–104(a) (LexisNexis 2009). In *MEO*, ¶ 55, 138 P.3d at 1161, we held that a minor with a living parent has a natural guardian; consequently, a guardianship may be established over the parent's objection only if he or she is found to be unfit. See also, *DJM v. DM (In the Interest of SRB–M)*, 2009 WY 22, ¶ 19, 201 P.3d 1115, 1119–20 (Wyo.2009); *AKA v. GS (In re Guardianship of BJO)*, 2007 WY 135, ¶ 13, 165 P.3d 442, 445 (Wyo. 2007).

[¶ 17] Here, the district court determined that Biological Mother was unfit and, because their Father was deceased, the Boys needed a guardian. Biological Mother did not appeal from the district court's determination that she was unfit. Consequently, we consider it established that appointment of a guardian for the Boys was necessary.

■ [¶ 18] Wyo. Stat. Ann. § 3–2–107(d) and (e) (LexisNexis 2009) governs who may be appointed as a minor's guardian. Those provisions direct:

§ 3–2–107. **Who may be appointed as guardian; preference for appointment of guardians.**

. . . .

(d) Subject to subsection (e) of this section, qualified persons have priority for appointment as guardian of a minor in the following order:

(i) The parent or parents of the minor;

(ii) The person nominated as guardian in the will of the custodial parent;

(iii) The person requested by a minor who has reached the age of fourteen (14) years;

(iv) Any other person whose appointment would be in the best interests of the minor.

(e) The court shall consider the priorities established in subsections (c) and (d) of this section, but shall not be bound by those priorities. The court shall appoint the person who is best qualified and willing to serve as guardian.

As indicated in the statute and our case law, the "best interests of the children" is the touchstone in awarding guardianship of minors. See, e.g., *BJO*, ¶ 14, 165 P.3d at 445–46.

■ [¶ 19] The district court issued a detailed decision letter and order setting forth its reasoning that appointment of Stepmother as the Boys' guardian was in their best interests. Although a great deal of the decision letter was devoted to the Biological Mother's fitness, it also included significant findings on the relative qualifications of Grandparents and Stepmother to serve as the Boys' guardian. The district court noted

§ 3–2–302. **Appointment of temporary guardian for educational, medical care and dental care purposes.**

. . . .

(b) A temporary guardian for educational, medical care and dental care purposes may be appointed through an ex parte guardianship order without notice to the child's natural parents if the court finds . . . temporary guardianship is in the best interests of the child and not detrimental to the interests of any other person and that no other person appears to have authority and willingness to act in the circumstances.

Wyo. Stat. Ann. § 3–2–302(b) (LexisNexis 2009).
It does not appear that the district court was specifically informed that Stepmother was proceeding under § 3–2–302. The petition did not cite to § 3–2–301 et seq. or include some of the required information, such as the last known address of Biological Mother, or a "concise statement setting forth the attempts made by the petitioner and whether the petitioner has been able to contact" the Biological Mother to advise her "of the petitioner's intent to enroll the child in school, to authorize medical or dental care or seek a temporary guardianship" for those purposes. Although the petition indicated that Stepmother was seeking appointment as guardian of the children for purposes of their "educational and medical care," it also stated that she was seeking appointment for purposes of providing the children with day-to-day care. An appointment as a guardian for all purposes fits within the general guardianship statutes, Wyo. Stat. Ann. § 3–2–101 et seq., rather than the specific provisions for appointment as temporary guardian for educational, medical or dental care purposes under § 3–2–301, et seq. Thus, § 3–2–301 et seq. does not apply in this case.

that Stepmother had been the Boys' primary caregiver since July 2005. She was actively involved in their education, social activities and counseling. The district court found that the Boys were doing "exceptionally well educationally" under Stepmother's care. The district court acknowledged Stepmother had been involved in many romantic relationships, including four marriages by the age of 25, but stated that the counselors had indicated that her "relationship issues" had not "affected her ability to care for and nurture" the Boys. In particular, the district court found that Stepmother's marriage shortly before the guardianship hearing "has not had a detrimental effect on the [Boys]."

[¶ 20]   Considering Grandparents' qualifications to serve as the Boys' guardians, the district court found that "Grandparents, while expressing an interest, have not been that actively involved in the minor children's lives since March of 2006, when the family moved to Thermopolis, and have not provided financial assistance for the minor children." The decision letter also stated that "although [Father] indicated a preference for his parents to have the custody of the children" it would not give that statement any weight.

[¶ 21]   Grandparents claim the district court erred by refusing to give effect to Father's written statement that they be appointed as the Children's guardians. At trial, Grandparents submitted a document signed by Father on July 3, 2007, in which he gave temporary custody of the Boys to the grandfather, AW. The document was handwritten, signed by Father and his signature was notarized. Section 3–2–107(d)(ii) states that priority for appointment of a guardian for a minor should be given to "[t]he person nominated as guardian in the will of the custodial parent." Grandparents concede that the document signed by Father was not technically a will, but argue that the district court should have considered it and given them preference as the Boys' guardians anyway. Regardless of the validity of the document, subsection (e) of the statute makes it very clear that, while the court shall consider the priorities set out for appointment of a guardian for minors, it is not bound by them.

Instead, the district court "shall appoint the person who is best qualified and willing to serve as guardian." The district court was explicit that it made its decision based upon the "best interests" of the Boys. Thus, there was no error in refusing to give effect to Father's wishes that grandfather act as the Boys' custodian.

[¶ 22]   The evidence presented at the evidentiary hearing establishes that the district court's findings regarding the relative abilities of the Stepmother and Grandparents to serve as guardian of the Boys were not clearly erroneous. The Boys had been in Stepmother's care since June or July 2005. According to their counselors, the Boys had gone from having significant psychological problems to well adjusted children while in her care. They described Stepmother's commitment to the Boys' counseling and her willingness to take part in the counseling sessions. The counselors testified that the Boys should remain in Stepmother's custody.

[¶ 23]   The counselors stated that Grandparents had not made an effort to participate in the Boys' counseling and had, in fact, only contacted them one time. The grandmother, LW, apparently contacted DMW's counselor shortly after Father's death asking for advice on how to tell the Boys that their father had died. The counselor recommended that they wait until Stepmother arrived in Ohio to tell them, but the grandfather, AW, told them without waiting for Stepmother.

[¶ 24]   The Boys' teachers also testified. They stated that the Boys were doing well in school and that Stepmother was very involved in their education. She took extraordinary steps to transition ALW from preschool to kindergarten by interviewing the potential teachers and selecting the teacher who would best meet his needs. She also arranged for him to visit the teacher prior to the start of the school year. The teachers testified that Stepmother attended conferences and other school related events and volunteered at school. She also regularly helped the Boys with homework. In contrast, they stated that the Grandparents had never contacted them. Thus, the counselors and teachers all agreed that the Boys were well cared for by Stepmother and Grandpar-

ents had not taken an active role in the Boys' counseling or education.

[¶ 25] Stepmother attended to the Boys' medical needs as well. She had arranged for medical insurance coverage for the Boys through the Wyoming Medicaid program. She took ALW to Billings, Montana, for medical tests and arranged for him to get a tonsillectomy and have tubes placed in his ears. She also saw to the Boys' dental care needs. Grandparents did not provide any financial assistance to Stepmother for the Boys' medical or dental care. The evidence also showed that Stepmother managed the Boys' social schedules. She testified that she ensured that they were involved in numerous extracurricular and religious activities.

[¶ 26] Grandparents emphasize Stepmother's history of a large number of romantic relationships and argue that her personal life is detrimental to the Boys' welfare. The evidence showed that Stepmother had been married four times, with her most recent marriage occurring shortly before the April 2008 hearing. In addition, she had an extramarital affair while married to Father and had dated other men after his death and before her current marriage.

[¶ 27] The GAL initially recommended that the Boys be placed with either Stepmother or Grandparents. After she learned of Stepmother's marriage, she revised her position and recommended that Grandparents be appointed as the Boys' guardians. The district court rejected the GAL's recommendation, concluding that the best interests of the Boys' required Stepmother to be appointed as their guardian. The district court specifically found that Stepmother's relationship history, including her recent marriage, did not adversely affect her ability to nurture and care for the Boys. The evidence supports the district court's findings. The counselors were aware of Stepmother's relationship history when they recommended that the Boys' remain in her custody. They stated that, despite Stepmother's romantic relationships, the Boys' had shown a steady improvement in all areas while in her care.

[¶ 28] Grandparents also point to the testimony of one of Stepmother's neighbors who stated that Stepmother had parties at her house until the early morning hours, while the boys were present. This neighbor had been enlisted by Grandparents to keep an eye on Stepmother. The problem with Grandparents' argument is that, even if we take the neighbor's testimony as true, the evidence does not indicate that Stepmother's behavior had an adverse impact on the Boys.

[¶ 29] Grandparents also maintain that they should have been appointed as guardians of the Boys because they are mature, stable, and financially responsible. The evidence certainly bears out that characterization of Grandparents, as they had been married and lived in the same home for many years and their financial situation appeared to be stable. However, despite being presented with evidence of Grandparents' personal stability, the district court concluded that appointing Stepmother as guardian was in the Boys' best interest based upon her devotion to the Boys.

[¶ 30] Finally, Grandparents state that they will make sure the Boys maintain a close relationship with Biological Mother and other extended family and suggest that Stepmother will not make such efforts. The record, however, shows that Stepmother allows and facilitates contact between the Boys and other family members. She also took the children to Ohio over Easter in 2008 and made arrangements for them to spend time with Grandparents and Biological Mother. The district court's order specifically recognized the importance of the Boys maintaining a relationship with Biological Mother and Grandparents. It ordered:

2. The Stepmother, Grandparents and [Biological] Mother shall work together with the counselors at Hot Springs County Counseling Center to establish an appropriate visitation plan that afford[s] the minor children a meaningful relationship and contact with [Biological] Mother and Grandparents.

3. Stepmother ... as Guardian and Conservator, of the minor children, shall keep the [Biological] Mother and Grandparents informed of the children's activities and school schedules.

The district court's order allays the concern that awarding guardianship to Stepmother will endanger the relationship between the Boys and the rest of their family.

[¶ 31]   We recognize that it may be unusual for children to be placed in the care of a stepparent rather than their biological grandparents.  The extraordinary nature of such an appointment is magnified by the fact that Stepmother was estranged from Father at the time of his death.  Nevertheless, the guardianship statutes mandate that the district court protect the children's best interests.  This is true even if it means placing the children with someone who is not related to them by blood.  Applying our standard of review, we will only set aside the district court's findings of fact if they are clearly erroneous.  There was ample evidence to support the district court's findings as to the ability and willingness of the parties to parent the Boys. On this record, we certainly cannot say that the district court's finding that placement of the Boys with Stepmother was in their best interest was clearly erroneous.

[¶ 32]   The district court's order is affirmed in all respects.