# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 65

APRIL TERM, A.D. 2013

*May 24, 2013*

IN THE MATTER OF THE
GUARDIANSHIP AND
CONSERVATORSHIP OF THOMAS
LANKFORD:

MAUREEN UTLEY and NORMA
BALLWEG,

Appellants
(Petitioners),

v.                                                          S-12-0202

THOMAS LANKFORD,

Appellee
(Respondent)

and

ELAINE HANKS,

Appellee
(Intervenor).

*Appeal from the District Court of Natrona County*
*The Honorable David B. Park, Judge*

*Representing Appellants:*
　　　Ann Rochelle, of Rochelle Law Offices, P.C., Casper, WY.

*Representing Appellees:*
William W. Harden, Casper, WY for Appellee Lankford; and Judith A. W. Studer, Carissa D. Mobley, and Marty L. Oblasser of Schwartz, Bon, Walker & Studer, LLC; Casper, WY for Appellee Hanks. Argument by Mr. Harden and Ms. Oblasser.

*Guardian ad Litem:*
Larry Middaugh, Casper, WY.

*Representing the Attorney General of the State of Wyoming as Amicus Curiae:*
Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; and Travis J. Kirchhefer, Senior Assistant Attorney General. Argument by Mr. Kirchhefer.

*Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Maureen Utley (Utley) and Norma Ballweg (Ballweg) (collectively Petitioners) petitioned to be appointed permanent guardians of their elderly uncle, Thomas Lankford. The district court dismissed the guardianship petition after finding Petitioners were not qualified to serve as guardians because their potential to inherit from Lankford created a disqualifying conflict of interest.  On appeal, Petitioners contend that the district court erred in finding a conflict of interest.  In the alternative, they assert that the guardianship conflict waiver statute, which allows a court to waive conflicts but limits that authority to conflicts of a spouse, adult child, parent, or sibling of a ward, violates their due process and equal protection rights.  We affirm.

## ISSUES

[¶2]    Petitioners present the following issues on appeal:

> Issue No. One: Statute: Did Appellants have "interests that may conflict" with those of the ward "during the guardianship period" simply because Appellants were nieces and potential beneficiaries of the ward's *Will* such that they were precluded from serving as guardians for their Uncle?
>
> Issue No. Two: Due Process: Can the State, consistently with due process requirements under the *U.S. Constitution* and the *Wyoming Constitution*, irrebuttably presume under Wyo. Stat. Ann. § 3-2-107 that all persons other than a "spouse, adult child, parent or sibling" have a conflict of interest with the ward without allowing those persons to provide individualized proof that they are competent to serve as guardian for their relative or individualized proof that the conflict is insubstantial?
>
> Issue No. Three: Equal Protection: Why should the interests of a "spouse, adult child, parent or sibling" be subject to the statutory exception under Wyo. Stat. Ann. § 3-2-107(b) allowing for a hearing, but not those of nieces, nephews, cousins, and other relatives?  Is Wyo. Stat. Ann. § 3-2-107 violative of equal protection under the *U.S. Constitution* and the *Wyoming Constitution*?

## FACTS

1

[¶3]   On April 11, 2011, Utley filed a Verified Petition to Establish Guardianship and Conservatorship (Petition), through which she sought to be appointed permanent guardian and permanent conservator for the person and estate of Lankford.  When the Petition was filed, Lankford was ninety-three years old, and Utley alleged:

> A guardianship and conservatorship are needed to assist Thomas Lankford with his personal, financial and medical decisions as he is unable, unassisted to care for himself and his property and to make personal, financial, educational, and medical decisions due to his advanced age and the onset of Alzheimer's. . . .

[¶4]   On May 3, 2011, Elaine Hanks (Hanks), another of Lankford's nieces, moved to intervene in the matter.  Through that motion, Hanks objected to the appointment of Utley as guardian/conservator and asserted that if an appointment is made, it should be Hanks who is appointed guardian/conservator.  Hanks filed her own motion to be appointed guardian/conservator along with her motion to intervene.

[¶5]   Lankford entered an appearance through his attorney and objected to the Petition, denying that there was any need for appointment of a guardian or conservator.  On May 11, 2011, the district court entered an order appointing Utley and Ballweg, Utley's cousin, as temporary co-guardians and co-conservators.[1]  Lankford objected to the temporary appointment, but the other parties stipulated to the appointment.  In regard to Hanks' stipulation, the court found as follows:

> [Counsel] advised the Court that while his client, Elaine Hanks, is not withdrawing her *Motion to Intervene*, and/or her *Petition* to serve as Thomas Lankford's guardian, she would be willing to stipulate to the appointment of Norma Ballweg and Maureen Utley [as] temporary co-guardians and temporary co-conservators while Thomas Lankford receives a medical examination.

[¶6]   On August 5, 2011, Hanks filed a motion seeking to terminate the temporary guardianship/conservatorship and requesting a ruling on her motion to intervene.  On January 5, 2012, the district court entered a stipulated order to appoint First Interstate Bank as Lankford's permanent conservator.  The order was consented to by Lankford and his guardian ad litem, as well as Hanks, Utley, and Ballweg.  On January 12, 2012, the parties filed a stipulation allowing Hanks to intervene in the guardianship proceedings.

---

[1]  Norma Ballweg was not a party to the original Petition filed by Utley, but following her appointment as temporary co-guardian and co-conservator, the district court appears to reference and treat her as a co-petitioner for purposes of the Petition.  Ballweg is also a named party in the present appeal, and for purposes of this opinion, we will therefore refer to Ballweg as if she were a party to the Petition.

Through that filing, Hanks withdrew her petition to be appointed Lankford's temporary guardian, asserted her continuing objection to Petitioners serving as Lankford's guardians, and requested that a professional guardian be appointed. On January 13, 2012, the court entered an order allowing Hanks to intervene in the guardianship proceeding.

[¶7]   On January 26, 2012, Hanks filed a document entitled Brief to the Court on Wyoming Guardianship Law. In that filing, Hanks again advised the district court that she was not seeking appointment as Lankford's guardian, but she objected to Petitioners' appointment because their appointment would be contrary to Lankford's best interests and his express wishes. With regard to the alleged conflict of interest, Hanks argued, in part:

> 26. In the present case, Thomas Lankford executed a Will in which he sets forth the beneficiaries of his estate after he passes away.
>
> 27. As previously stated, Thomas Lankford is not married nor does he have children. His closest living heirs include his brother Bill Lankford, and his nieces and nephews.
>
> 28. As recognized by Wyoming law, as heirs and/or beneficiaries' (sic) to Thomas Lankford's estate, the proposed permanent guardians, Maureen Utley and Norma Ballweg, stand to inherit substantially at Mr. Lankford's death and therefore have "interests that may conflict with those of the ward." Wyo. Stat. Ann. § 3-2-107(a)(iii).
>
> 29. Pursuant to Wyo. Stat. Ann. § 3-2-107(b) the Court can waive certain conflicts of interest with regard to heirs but not the conflict present in this matter:
>
>> A Person may be appointed as guardian of a respondent, notwithstanding the provisions of subsection (a) of this section that would otherwise disqualify the person, **if the person is the spouse, adult child, parent or sibling of the respondent** and the court determines that the potential conflict of interest is insubstantial and that the appointment would clearly be in the best interests of the respondent. (Emphasis added.)
>
> 30. The Wyoming Legislature specifically excluded extended family members, including nieces, from its exhaustive list of

3

those who have conflicts of interest that the Court can ultimately waive.

31. As Thomas Lankford's nieces, both Maureen Utley and Norma Ballweg are not qualified persons to serve as his permanent guardian because of their respective conflicts of interest, which cannot be waived pursuant to Wyo. Stat. Ann. § 3-2-107(b).

[¶8] An evidentiary hearing on the Petition was held on January 27, 2012, and June 14, 2012. In between the two hearing dates, on March 7, 2012, Hanks requested an *in camera* review of Lankford's will. In support of that request, Hanks stated, in part:

13. As Thomas Lankford's nieces, should Maureen Utley and Norma Ballweg take pursuant to Mr. Lankford's will or take pursuant to Wyoming intestacy law, they are not qualified persons to serve as his permanent guardian because of their respective conflicts of interest, which cannot be waived pursuant to Wyo. Stat. Ann. § 3-2-107(b).

14. Should the Court review the Will of Mr. Lankford and find that Maureen Utley and Norma Ballweg are disqualified from serving as guardian pursuant to Wyo. Stat. Ann. § 3-2-107, it would be unnecessary to continue the trial and for the Court to hear evidence as to whether Maureen Utley is fit to serve as Thomas Lankford's guardian.

15. Undersigned counsel has conferred with counsel in this matter and Counsel does not object to the Court conducting an *In Camera* review of Mr. Lankford's Last Will and Testament.

[¶9] On March 20, 2012, Petitioners responded to Hank's request for an *in camera* review. Petitioners argued against the relevance of Lankford's will, stating:

Maureen Utley and Norma Ballweg "might" be beneficiaries entitled to Thomas Lankford's estate, but that does not give them an interest "during the guardianship" that "conflicts with the ward's interests". Maureen Utley and Norma Ballweg have a mere expectancy not an actual present interest.

. . . .

4

> The fact that Norma Ballweg or Maureen Utley may be beneficiaries under *The Last Will and Testament of Thomas Lankford* or may be heirs of Thomas Lankford entitled to inherit from Thomas Lankford if he dies intestate does not make the *Will* relevant. That Norma Ballweg or Maureen Utley may be heirs or beneficiaries does not create "interests that may conflict with those of the ward" "during the guardianship period" under Wyo. Stat. § 3-2-107(a)(iii).

[¶10] The district court reviewed Lankford's will and gave all parties the opportunity to likewise review the will, subject to the court's order that the contents of the will not be disclosed by the parties. On June 14, 2012, during the continuation of the evidentiary hearing, the court orally announced its decision to dismiss the Petition. The court ruled that Petitioners were not qualified to serve as guardians because of the conflict of interest created by their potential to inherit from Lankford, which conflict was one that the court could not waive.

[¶11] On June 18, 2012, Petitioners filed a Motion to Reconsider or in the Alternative for Certification of Questions to the Wyoming Supreme Court. Through that motion, Petitioners asked the district court to "reconsider its ruling on June 14, 2012," and for the first time argued that Wyo. Stat. Ann. § 3-2-107 violates their constitutional rights to due process and equal protection. On August 21, 2012, the court entered an order denying the motion. In so ruling, the court stated, in part:

> 3. Post-judgment motions to reconsider are not recognized in Wyoming. *See Ragsdale v. Hartford Underwriters Insurance Company*, 169 P.3d 78, 81 (Wyo. 2007); *Plymale v. Donnelly*, 125 P.3d 1022, 1023 (Wyo. 2006).
>
> 4. In the present matter, Petitioners were fully aware throughout the proceedings that one basis for Ms. Hanks' objections to them serving as Co-Guardians was pursuant to Wyo. Stat. Ann. § 3-2-107.
>
> 5. Petitioners failed to raise any issues with the constitutionality of Wyo. Stat. Ann. § 3-2-107 until after the final disposition of this matter.
>
> . . . .
>
> 7. This Court declines to reopen the matter to allow Petitioners to assert their claim of unconstitutionality.

5

[¶12]  Also on August 21, 2012, the district court issued its written Order after Hearing Dismissing Verified Petition to Establish Guardianship.  The court stated its relevant findings and conclusions as follows:

>      5.      Findings from Will: Furthermore, in accordance with this Court's In Camera Review of the *Last Will and Testament of Thomas Lankford*, the arguments of the Parties, and giving the proposed guardians the benefit of the doubt, there is no issue that Thomas Lankford's Will creates a mere expectancy of inheritance.  Although, there is no dispute that a potential inheritance creates a mere expectancy and not a present interest, the issue directly before the Court is whether this expectancy creates interests that may conflict with those of the ward during the guardianship period.
>
>      6.      Conflict of Interest: This Court FINDS that a proposed guardian who expects to inherit from the proposed ward does have, or is likely to have, interests that *may* conflict with those of the ward.  The conflict being that the proposed guardian, who expects to inherit, has interests in shielding their potential inheritance, which may conflict with the interests of the ward.  The proposed guardian may not best serve the interests of the ward if that would mean diminishing the size of the proposed guardian's expected inheritance.
>
>      7.      Accordingly, sufficient evidence exists to FIND Petitioners have an expectancy of inheritance, which interest may conflict with those of the ward, disqualifying Petitioners from serving as Thomas Lankford's guardian.
>
>                      **CONCLUSIONS OF LAW**
>
>      1.      Pursuant to Wyo. Stat. Ann. § 3-2-107:
>
>      (a) The court may appoint any qualified person as guardian of an incompetent person of a minor.  The court may not appoint a person to be a guardian of an incompetent person or a minor if the person proposed to act as guardian:

6

> iii. Has, or is likely to have during the guardianship period, interests that may conflict with those of the ward.

2. Pursuant to Wyo. Stat. Ann. § 3-2-107(b) the Court can waive certain conflicts of interest with regard to heirs but not the conflict present in this matter:

> A person may be appointed as guardian of a respondent, notwithstanding the provisions of subsection (a) of this section that would otherwise disqualify the person, if **the person is the spouse, adult child, parent or sibling of the respondent** and the court determines that the potential conflict of interest is insubstantial and that the appointment would clearly be in the best interests of the respondent. (Emphasis added.)

3. The Statute excludes extended family members, including nieces, from its exhaustive list of those who have conflicts of interest that the Court can ultimately waive.

4. Once the Court finds a conflict exists, the statute is clear the Court has no discretion and cannot appoint a person with a conflict as a guardian of an incompetent person, aside from those individuals who are specifically waived.

[¶13] Petitioners filed a timely notice of appeal to this Court. On January 2, 2013, while Petitioners' appeal was pending, the district court, under a separate probate filing, entered an Order for Permanent Guardianship appointing the Wyoming Guardianship Corporation to serve as Lankford's permanent limited guardian. Specifically, the order provided:

> Wyoming Guardianship Corporation is hereby appointed the permanent limited guardian of Thomas Lankford. The powers of Wyoming Guardianship are limited to deciding Thomas Lankford's placement and whether he can drive.

## STANDARD OF REVIEW

[¶14] This Court has stated as follows concerning our standard of review in guardianship matters:

7

We presume the district court's findings of fact are correct and will not set them aside unless the findings are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. Additionally, we review a district court's conclusions of law *de novo*. … Construction of the guardianship statutes involves a question of law which we review *de novo*.

*In re DMW*, 2009 WY 106, ¶ 10, 214 P.3d 996, 998 (Wyo. 2009) (quoting *KO v. LDH (In re Guardianship of MEO )*, 2006 WY 87, ¶ 17, 138 P.3d 1145, 1150 (Wyo. 2006)). "A finding of fact is clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *DMW*, ¶ 10, 214 P.3d at 998 (quoting *In re Estate of Thomas*, 2009 WY 10, ¶ 6, 199 P.3d 1090, 1093 (Wyo. 2009)).

[¶15] This appeal also challenges the constitutionality of the guardianship statutes, which is a question of law we review *de novo*. *Bear Cloud v. State*, 2013 WY 18, ¶ 13, 294 P.3d 36, 40 (Wyo. 2013).

## DISCUSSION

### A.    District Court's Conflict of Interest Finding

[¶16] Petitioners contend that the district court erred in finding a conflict of interest based on their potential inheritance from Lankford's estate. They do not dispute that they may inherit from Lankford, but instead argue that "a potential inheritance is a mere 'expectancy' and not a present interest," and that "[b]ecause an expectancy is not a 'present interest,' there can be no conflict during the guardianship period." We reject Petitioners' argument as contrary to the plain language of the guardianship statute governing conflicts of interest.

[¶17] Wyo. Stat. Ann. § 3-2-107 defines who a court may appoint to serve as a guardian. It provides, in part:

> (a)    The court may appoint any qualified person as guardian of an incompetent person or a minor. The court may not appoint a person to be a guardian of an incompetent person or a minor if the person proposed to act as guardian:
>
> . . . .
>
> (iii)    Has, or is likely to have during the guardianship period, interests that may conflict with those of the ward[.]

Wyo. Stat. Ann. § 3-2-107(a)(iii) (LexisNexis 2011).

[¶18] Our first step in considering Petitioners' argument is to interpret the language of Section 107. In doing so, we use the following rules of statutory interpretation:

> In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

*Redco Constr. v. Profile Properties, LLC*, 2012 WY 24, ¶ 26, 271 P.3d 408, 415-416 (Wyo. 2012) (quoting *Cheyenne Newspapers, Inc. v. Building Code Bd. of Appeals of City of Cheyenne*, 2010 WY 2, ¶ 9, 222 P.3d 158, 162 (Wyo. 2010)).

[¶19] In considering the plain language of § 3-2-107, we are struck by the use in subsection (a)(iii) of the terms "has, or ***is likely to have***," and "interests that ***may*** conflict." The term "may" carries the definition: "Has a possibility (to); might." *Black's Law Dictionary* 993 (7th ed. 1999). The use of this language, "likely to have" and "may," expresses a legislative concern with even the potential of a conflict between the interests of a guardian and ward. *See also* Wyo. Stat. Ann. § 3-2-107(b) (describing the disqualifying interest as a "potential conflict of interest"). This legislative concern is consistent with the tone of the entire statutory framework governing guardianships, which reflects a clear concern with protection of the ward's interests and rights, with less attention directed to the interests and rights of a guardian or proposed guardian. *See, e.g.,* Wyo. Stat. Ann. § 3-101-1(a)(iv) (guardian as fiduciary); Wyo. Stat. Ann. § 3-1-205 (rights of proposed ward); Wyo. Stat. Ann. § 3-1-206 (rights of ward); Wyo. Stat. Ann. § 3-2-101(a)(v) (petition must allege facts showing best interest of proposed ward requires appointment); Wyo. Stat. Ann. § 3-2-109 (guardian reporting requirements).

[¶20] Given the legislative intent expressed by the language used in § 3-2-107(a)(iii), we are unable to agree with Petitioners that their potential to inherit from Lankford is a mere expectancy that cannot be considered an interest sufficient to disqualify them from a guardianship appointment. Certainly it is true, as Petitioners argue, that Lankford could change his will, or other events could occur or not occur, that might affect Petitioners' potential to inherit. Nonetheless, Petitioners' undisputed potential to inherit, whether that interest is a present interest or an expectancy, is an interest that **may** conflict with Lankford's interest as ward. That conflict is just as described by the district court:

> The conflict being that the proposed guardian, who expects to inherit, has interests in shielding their potential inheritance, which may conflict with the interests of the ward. The proposed guardian may not best serve the interests of the ward if that would mean diminishing the size of the proposed guardian's expected inheritance.

[¶21] Furthermore, we find the Petitioners' proffered distinction between a present interest and an expectancy to be at odds with the conflict waiver provision of Section 107. That subsection provides:

> A person may be appointed as guardian of a respondent, notwithstanding the provisions of subsection (a) of this section that would otherwise disqualify the person, if the person is the spouse, adult child, parent or sibling of the respondent *and the court determines that the potential conflict of interest is insubstantial and that the appointment would clearly be in the best interests of the respondent*.

Wyo. Stat. Ann. § 3-2-107(b) (LexisNexis 2011) (emphasis added).

[¶22] In asking the district court to ignore their potential inheritance because it was a mere expectancy and not a present interest, Petitioners were essentially requesting that the court weigh the significance of their potential conflict of interest. That is, Petitioners were asking the court to consider that Lankford might "die penniless" or change his will, thus affecting the amount of Petitioners' inheritance, if any. According to the terms of Section 107(b), that is an exercise the court may undertake only if the proposed guardian is the spouse, adult child, parent or sibling of the ward. Thus, when we read Sections 107(a) and (b) together, it is clear that an interest need not be shown to be of a particular magnitude or immediacy to be a disqualifying interest under subsection (a) and it would have been error for the district court to make the requested distinction between a present interest and an expectancy.

10

[¶23] Because the language of Section 107(a)(iii) guards against even a potential conflict of interest, a court need not measure the significance of a proposed guardian's interest, or ascribe to a proposed guardian an ill motive or intent before finding that the proposed guardian's interests disqualify him or her from an appointment under subsection (a). And, we emphasize that the district court in this case made no such findings of ill motive or intent regarding Petitioners. The court's finding of a conflict of interest was simply the required finding given the abundance of caution the legislature clearly intended to have brought to the appointment of a guardian.

## B.     Constitutional Challenge to Conflict Waiver Statute

[¶24] Petitioners contend that § 3-2-107(b) violates their constitutional equal protection and due process rights because the statute excludes nieces from its list of family members for whom a court may waive a conflict of interest. As discussed above, Petitioners first raised their constitutional claims in a motion for reconsideration after the district court orally announced its decision to dismiss the Petition due to Petitioners' conflict of interest. The court declined to address the constitutional issue on two grounds: 1) a post-judgment motion to reconsider is not a valid motion under Wyoming law; and 2) Petitioners did not timely raise the issue. On appeal, Petitioners assert that the district court erred in not considering the constitutional issues, and they urge this Court to address the claims for the first time on appeal. We conclude that the constitutional claims are not properly before this Court and therefore will not address the claims.

[¶25] Petitioners argue that the district court erred in treating Petitioners' motion for reconsideration as a post-judgment motion barred by *Plymale v. Donnelly*, 2006 WY 3, 125 P.3d 1022 (Wyo. 2006) because an oral ruling is not a final judgment. They further contend that their motion should be treated as a W.R.C.P. 59 motion to alter or amend the court's ruling and that the constitutional issues were thus properly raised before the district court. Specifically, Petitioners argue:

> Appellants were legitimately raising new legal arguments for the Trial Court to consider. While it was captioned as a Motion to Reconsider, the Motion fits the criteria of a Rule 59(a) motion[.]. . .
> . . . Appellants were properly raising one of the specified grounds for a new trial by advising the Trial Court that there was an "error of law" in that there were important constitutional issues that should be considered.

[¶26] We agree with Petitioners that a district court has jurisdiction to amend its rulings before entry of a final judgment under W.R.C.P. 54. *See Parris v. Parris*, 2009 WY 44, ¶ 17, 204 P.3d 298, 303-04 (Wyo. 2009) (district court is free to revise its rulings prior to judgment); *Steranko v. Dunks*, 2009 WY 9, ¶ 6, 199 P.3d 1096, 1097 (Wyo. 2009)

(recognizing "district court's traditional authority to revise its rulings prior to final judgment"). We conclude, however, that even if the district court retained jurisdiction to revise its ruling before entry of a final judgment, Petitioners have not cited a basis that would have required the district court to consider their newly raised constitutional argument.

[¶27] Petitioners' reliance on Rule 59 as a basis for requiring the district court to consider their constitutional claims is misplaced. This Court has repeatedly held that a motion to alter or amend a ruling "is not a mechanism to relitigate issues that the court has already decided, nor should parties make additional arguments which should have been made before judgment." *In re Estate of Nielsen*, 2011 WY 71, ¶ 17, 252 P.3d 958, 962 (Wyo. 2011) (quoting *Ragsdale v. Hartford Underwriters Ins. Co.*, 2007 WY 163, ¶ 5, 169 P.3d 78, 80 (Wyo. 2007)); see also *Sherman v. Rose*, 943 P.2d 719, 721 (Wyo. 1997), *overruled on other grounds* (Motion to alter or amend "must articulate a new ground which could not have been brought before the court during the action."). Petitioners had notice as early as January 26, 2012, when Hanks filed her opposition brief, that Hanks objected to Petitioners' guardianship appointment because Petitioners had an interest that conflicted with that of Lankford as ward. Petitioners likewise had notice, from the same filing, of Hanks' contention that Petitioners' conflict of interest was one that the court could not waive under § 3-2-107(b). Petitioners thus had an opportunity to raise their constitutional challenge to § 3-2-107(b) before the district court dismissed the Petition on June 14, 2012, and the district court did not err in declining to address the issue after its dismissal.

[¶28] Finally, Petitioners argue that even if this Court finds that the district court did not err in refusing to consider Petitioners' constitutional claims, the Court should nonetheless address the claims. This Court strongly adheres to a rule that it will not address issues that were not properly raised before the district court. *See Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004); *Daley v. Wenzel*, 2001 WY 80, ¶ 19, 30 P.3d 547, 552 (Wyo. 2001); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo. 2000). Our recognized exceptions to this rule are when a newly presented issue raises a jurisdictional question or when the issue is of such a fundamental nature that it must be considered. *Davis*, ¶ 26, 88 P.3d at 490.

[¶29] In support of their position that the Court should consider their newly raised constitutional arguments, Petitioners state no more than, "There are fundamental rights involved." Petitioners do not expand on this statement, and we presume that what they are urging is that the claims should be considered because they involve constitutional rights. This Court has, however, declined to address newly raised issues that present constitutional questions where nothing more is shown to compel the Court's review. *See Daley*, ¶ 19, 30 P.3d at 553 ("[W]here the issue of a statute's constitutionality is not raised in the trial court, we will not consider the matter unless the issue goes to jurisdiction or is otherwise of such a fundamental nature that the Court must take

12

cognizance of it."); *Wyo. Workers' Safety and Comp. Div. v. Wright*, 983 P.2d 1227, 1231 (Wyo. 1999) ("'Due process' is not a talismanic term which guarantees review in this court of ***procedural errors correctable by the administrative tribunal***.") (emphasis in original).

[¶30]  Petitioners did not timely present their constitutional claims to the district court and have not presented this Court with a sufficient basis to avoid our rule that we will not consider claims raised for the first time on appeal.  We thus decline to address Petitioners' constitutional challenge to § 3-2-107(b).

## CONCLUSION

[¶31]  The district court did not err in finding that Petitioners had a conflict of interest that disqualified them from serving as Lankford's guardians, and we do not address Petitioners' constitutional claims.  Affirmed.