# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 87

APRIL TERM, A.D. 2014

_July 8, 2014_

IN THE MATTER OF THE
GUARDIANSHIP AND
CONSERVATORSHIP OF WILLIAM
G. BRATTON, Ward,

ROBERT E. BRATTON,

Appellant
(Petitioner),

v.                                                    S-13-0226

JEANNE BLENKINSOP,

Appellee

_Appeal from the District Court of Park County_
_The Honorable Steven R. Cranfill, Judge_

_Representing Appellant:_
    Robert E. Bratton, _Pro se_

_Representing Appellee:_
    Mary Helen Reed of McCarty, Reed & Earhart, Attorneys at Law, L.C., Cody,
    Wyoming

_Before BURKE, C.J., and HILL, KITE*, DAVIS, and FOX, JJ._

_* Chief Justice at time of expedited conference_

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, **Justice.**

[¶1]    Appellant Robert Bratton (Bratton) petitioned for appointment as guardian of his seventy-six-year-old brother William (William).    Their sister, Appellee Jeanne Blenkinsop (Blenkinsop), cross-petitioned and asked that she instead be appointed as William's guardian and conservator.   When Bratton failed to appear at a pretrial conference, the district court dismissed his petition and appointed Blenkinsop to temporarily assume those duties.  We affirm.

## ISSUES

[¶2]    We summarize the issues presented as follows:

> 1.  Did the district court err in failing to address Bratton's motion for alternative dispute resolution and his motion to quash the proposed order dismissing his petition?
>
> 2.  Did a second judge err in denying Bratton's motion to disqualify the judge who was presiding over the guardianship/conservatorship proceedings for cause?

## FACTS

[¶3]    William Bratton suffers from a lifelong mental disability.  Although the record contains no precise diagnosis of his affliction, the parties and the guardian ad litem characterized it as akin to Asperger's syndrome, a relatively mild form of autism spectrum disorder.[1]   Prior to her death in 2004, William's mother established a trust designed in part to support William in his later years.  It provided that he could live in the family home in Cody as long as he was able to do so, and for payment of his living expenses from a Wells Fargo money market account.

[¶4]    Blenkinsop and Bratton were the sole trustees, and both had access to the Wells Fargo account.[2]   Sometime prior to the filing of their competing petitions to serve as

---

[1] Asperger's is considered the mildest of such neurodevelopment disorders, in that those afflicted display normal intellect and are highly functional.  http://www.ninds.nih.gov/disorders/asperger/detail_asperger.htm.

[2] The record reveals little more about the provisions of the trust. Bratton claimed that William's trust contained more than $850,000 worth of stocks, but we cannot determine whether that was separate from the money market account.  We also cannot tell whether Blenkinsop and Bratton were able to access any portion of the trust assets for their own use at the time of the litigation or whether they were residual beneficiaries of the assets set aside for William.

guardian, they took steps to prevent William from accessing the account because he had fallen prey to financial "scammers" who target the elderly and infirm.

[¶5]    That particular vulnerability was the one point of agreement in Bratton's petition for guardianship filed on June 29, 2012, and the cross-petition for guardianship and conservatorship filed by Blenkinsop on July 19.   Bratton believed that William was mentally incompetent to a degree that rendered him unable to handle his personal affairs, his health needs, and his finances.[3]   However, Blenkinsop, while conceding that William was at times unable to care for himself and his property without assistance, asserted that he was generally able to meet his own medical needs in a reasonable manner.  She also indicated that she assisted him in all of his financial affairs, and that she had prevented him from having access to large amounts of funds that others could swindle from him. Finally, Blenkinsop reported that she and William agreed that her appointment as his guardian and conservator would be in his best interest.  William confirmed this by filing a signed and notarized document with the district court.[4]   Blenkinsop contemporaneously moved for appointment of a guardian ad litem to independently meet with and report on William's condition, represent his interests, and make a written recommendation as to whether she or Bratton should be appointed his permanent guardian and/or conservator.

[¶6]    On August 2, 2012, two weeks after Blenkinsop filed her cross-petition, Bratton's attorney moved to withdraw from the case for reasons that cannot be ascertained from the record transmitted to this Court.  Thereafter, Bratton represented himself.

[¶7]    On September 11, Blenkinsop filed a motion alleging that the Wells Fargo money market savings account had been established solely for William's benefit, that only she and Bratton had access to those funds, and that on July 23, 2012, Bratton transferred $10,000 of William's money to a checking account that he controlled.   Blenkinsop moved for an order requiring Bratton to return the money.   Bratton had named the account in which the funds were deposited the "William Bratton Guardian Legal Fund."

[¶8]    The guardian ad litem appointed by the court on September 14 filed a report on December 19, 2012.  After reviewing William's medical records and interviewing him and his neighbors, friends, and family members, she concluded that he was bright and independent, and that he had a desire to remain active that was perhaps more important to him than the cleanliness of his home.  To illustrate, she noted that he took a summer job in 2012 washing dishes for a local Pizza Hut.  Nevertheless, because of concerns that his

---

[3] Bratton did not petition to be appointed Williams' conservator under Wyo. Stat. Ann. § 3-3-101 *et. seq*. This is perplexing in light of the fact that there were major concerns about Williams' susceptibility to fraud and inability to manage funds, and only a conservator could have managed his funds.  Wyo. Stat. Ann. §§ 3-3-601, -606, -607 (LexisNexis 2013).

[4] That document was signed and notarized July 20, 2012, but was not filed with the court until September 10, 2012.

2

mental disability might worsen with age, she concluded that he needed assistance to manage his finances and help to care for himself and his home. In regard to his medical needs, she recommended that he have more regular health care screenings and preventative care, and that he form a consistent patient relationship with a primary care physician.

[¶9] Those interviewed by the guardian ad litem suggested that Blenkinsop was better suited than Bratton to handle William's affairs. They pointed out that Blenkinsop had helped William for years, and that she included him in the life and activities of her family. They noted her substantial investment of time and effort to remain actively engaged and involved with him, and they felt that she genuinely cared for him.

[¶10] In contrast, those interviewed were suspicious of Bratton's recent interest in William. They portrayed him as rigid and controlling, with an approach to life that would not mesh well with William's. They generally considered him impatient and selfish, and some attributed their views to the fact that he became totally estranged from one of his daughters during her early teens, after which Blenkinsop took the girl in, raised her, and put her through college. In addition, the guardian ad litem was informed that Blenkinsop consistently spent eight to nine months a year in Cody, while Bratton was there for only three to six months per year, and that Bratton had expressed a desire to institutionalize William and sell the family home.

[¶11] Based on the information she gathered and William's preference, the guardian ad litem recommended that the court appoint Blenkinsop as his permanent guardian and conservator. She also recommended that William be allowed to reside in the family home until he could no longer live independently.

[¶12] On February 11, 2013, the district court ordered Bratton to deposit the $10,000 he had transferred from the Wells Fargo money market savings account with the court. Four days later, Bratton moved for an order requiring a psychological evaluation of William and postponing all settings until that evaluation could be completed. On February 21, the court issued a scheduling order which memorialized an agreement by the parties that any efforts to mediate their differences would be completed by May 31, 2013, and which set a final pretrial conference and trial for October 9 and October 23 of 2013 respectively. The record before us does not demonstrate any attempt at mediation prior to the May 31 deadline.

[¶13] On June 6, 2013, the district court reset the pretrial conference and the trial for August 7 and September 3. On July 8, 2013, it ordered William to undergo a psychological evaluation prior to trial. On July 22, Bratton moved the court to assign the case to a mediator and to appoint his nominee to that position. He did not request a hearing on that motion.

[¶14] Blenkinsop filed her pretrial memo on July 31, seven days before the scheduled conference, and the guardian ad litem filed hers on August 2. Blenkinsop noted that the court would probably need to address Bratton's motion for alternative dispute resolution (ADR) at the pretrial conference, and the guardian ad litem advised the court that the parties were trying to agree on a mediator to complete mediation.

[¶15] Bratton did not file a pretrial memo prior to the conference, move to continue the conference, advise the court that he could not attend it for some reason, or show up at the appointed date and time. Blenkinsop's attorney told the court at the conference that she had spoken to Bratton briefly about the mediation he had proposed, and that she had emailed him about his failure to file a pretrial memo, but that he never responded to the email. The guardian ad litem told the court that she had received an email from Bratton acknowledging that he was aware of the pretrial conference, which was to take place the same morning as the email. That email, which was read into the record, indicated that Bratton thought mediation would have been completed by now, that he believed the case would still go to trial because the mediation would be unsuccessful, and that it was unrealistic to believe that mediation could be completed and the trial held in roughly four weeks as then scheduled.

[¶16] The district court decided that it would sanction Bratton for his failure to attend the pretrial conference and participate in the orderly resolution of the case by dismissing his petition for guardianship. It asked Blenkinsop's counsel to draft an order to that effect.

[¶17] Counsel prepared the order and emailed a copy to Bratton for his approval as to form on August 13, 2013. Bratton refused to approve the proposed order and instead moved to quash it on August 23. As grounds for that relief, he claimed that he was denied the opportunity to address the court regarding his motion to assign the case to a mediator. On September 9, the district court entered the order drafted by Blenkinsop's attorney.

[¶18] Three weeks later, Bratton filed a petition to disqualify the presiding judge for alleged bias, and that petition was assigned to a district judge in Cheyenne to determine whether there were grounds for disqualification. On October 8, 2013, Bratton filed a notice of appeal from the order dismissing his guardianship petition.

[¶19] Bratton's petition for disqualification was denied on October 16, 2013. The specially-assigned district judge found no evidence of bias in the petition for disqualification and its attachments, even assuming Bratton's factual allegations to be true.

4

## DISCUSSION

[¶20] Our resolution of Bratton's claims turns on whether the district court properly dismissed his guardianship petition because he failed to attend the pretrial conference.[5] That ruling relates directly to the propriety of the conduct he challenges on appeal.

[¶21] We look first to Rule 16(f) of the Wyoming Rules of Civil Procedure, which authorizes trial courts to impose sanctions upon a party for failing to appear at a scheduled pretrial conference.

> (f) *Sanctions*. – If a party or a party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in [W.R.C.P.] 37(b)(2)(B), (C) and (D).

W.R.C.P. 16(f). In turn, Rule 37(b)(2)(C) authorizes the court to issue "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]" W.R.C.P. 37(b)(2)(C).

[¶22] Trial courts have broad discretion to impose the sanctions permitted by this rule, including dismissal of an action or portion thereof. We review decisions imposing sanctions for abuse of discretion. *Mora v. Husky Oil Co.*, 611 P.2d 842, 846 (Wyo. 1980). A court does not abuse its discretion unless it acts unreasonably under the circumstances. *Parris v. Parris*, 2009 WY 44, ¶ 15, 204 P.3d 298, 303 (Wyo. 2009).

[¶23] We applied that standard in *Travelers Insurance Co. v. Palmer*, 714 P.2d 765 (Wyo. 1986), which is procedurally similar to this appeal. In that case, the district court dismissed a complaint when the plaintiff's attorney failed to file a pretrial memorandum or attend a pretrial conference without previously contacting the court or offering any explanation for these omissions. *Id.* We held that when the record contains no timely explanation to the trial court for a party's failure to appear, we cannot find an abuse of discretion if the district court dismisses the case, and we will not set aside a dismissal in favor of some lesser sanction under those circumstances. *Id.* at 767.

---

[5] Oddly, Bratton does not claim that the district court improperly dismissed his petition.

5

[¶24]  An attorney's offered explanation for failing to appear at a status or scheduling conference will not necessarily deprive a court of the discretion to dismiss his client's case under Rules 16(c) and 37(b)(2)(C).  In *Ikerd v. Lacy*, 852 F.2d 1256 (10th Cir. 1988),[6] the plaintiff's attorney did not attend a status and scheduling conference, did not notify the trial court or opposing counsel that he was unable to attend, and did not seek a continuance of the conference.  The court dismissed his client's case even though counsel had not previously violated any scheduling orders.  It also denied his motion to reconsider that ruling even though he claimed to have been in the courthouse but engaged in proceedings in another case.  The appellate court affirmed, noting that counsel was aware of the setting for the scheduling conference fifteen days before it took place.  *Id.* at 1258-59.

[¶25]  Bratton had nearly two months' notice of the pretrial conference, and communicated to other attorneys in the case that he knew when it was to be held.  He offered the district court no explanation for his failure to file a pretrial memo or appear.  The district judge acted well within the proper scope of his discretion when he dismissed Bratton's petition for guardianship.

**Bratton's Motion to Quash the Order Dismissing His Petition**

[¶26]  Bratton also asserts that the district court erred in failing to consider his motion to quash the order dismissing his petition for guardianship.  From the title and timing of the motion, one would expect it to attack the district court's rationale for dismissing the petition or to provide some explanation for his failure to file a pretrial memo or appear at the pretrial conference in an effort to convince the judge to change his ruling.  If that were the case, one could accurately characterize it as a motion for reconsideration of the order of dismissal.  Because it preceded the filing of that order by seventeen days, it was a prejudgment motion for reconsideration.  District courts may properly consider such motions because, traditionally, trial courts have enjoyed the authority, in their discretion, to revise their rulings prior to the entry of a final order.  *McWilliams v. State*, 2012 WY 153, ¶ 9, 289 P.3d 780, 783 (Wyo. 2012); *Steranko v. Dunks*, 2009 WY 9, ¶ 6, 199 P.3d 1096, 1096-97 (Wyo. 2009).

[¶27]  If that was Bratton's intent, he failed miserably.  He did not challenge the district court's reasons for dismissing his petition, and he did not attempt to explain or excuse his failure to file a pretrial memo or appear in the motion or any other document in the record.  Consequently, if the motion to quash is viewed as one for reconsideration, *Travelers Insurance* and *Ikerd* compel us to conclude that the district court acted within its proper discretion in declining to consider and rule on that motion.

---

[6] Because of the similarities between federal and Wyoming rules of civil procedure, we look to federal authority interpreting a particular rule as an aid in applying the comparable Wyoming rule.  *Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174, 1178 n.4 (Wyo. 1986).

[¶28] Bratton's appellate brief suggests that he intended to renew the motion asserting what he conceives to be an absolute right to an order requiring mediation. He also evidently believes that right survived his failure to file a pretrial memorandum and his absence from the pretrial conference. This argument is identical to the claim that the district court erred when it failed to order the case to mediation as he requested, which we address below.

**Bratton's Motion to Assign the Case to a Mediator**

[¶29] Bratton's district court filings and his appellate brief do not directly say as much, but he appears to base his argument, raised for the first time on appeal, on the following language of W.R.C.P. 40(b):

> (b) *Limited assignment for alternative dispute resolution.* – **The court** may, or **at the request of any party shall, assign the case** to another active judge or to a retired judge, retired justice, or other qualified person on limited assignment **for the purpose of invoking nonbinding alternative dispute resolution methods, including settlement conference and mediation.** By agreement, the parties may select the person to conduct the settlement conference or to serve as the mediator. If the parties are unable to agree, they may advise the court of their recommendations, and the court shall then appoint a person to conduct the settlement conference or to serve as the mediator. A settlement conference or mediation may be conducted in accordance with procedures prescribed by the person conducting the settlement conference or mediation.

W.R.C.P. 40(b) (emphasis added).[7] Bratton appears to argue that the highlighted language of the rule required the district judge to assign the case to mediation and to stay all other proceedings until it was complete.

[¶30] If that is the contention, it is wrong. First of all, the scheduling order set a deadline to complete mediation, which had long passed when the motion seeking ADR was filed. It is well within a trial court's discretion to require the parties to complete mediation by a date sufficiently in advance of other scheduled dates to assure that late requests for ADR do not disrupt the docket. A trial judge need not permit a last-minute

---

[7] One might question whether the rule should say that a judge "shall" order mediation when requested by one party. Parties who have a genuine desire to resolve their disputes commonly arrange for mediation by private mediators without any court involvement, or they ask the court to appoint a judge who has already agreed to mediate. The "shall" language has in the experience of this writer been wielded most frequently by one party to attempt to delay a trial when the other party sees no hope of settlement.

request for mediation to derail a schedule which will expeditiously dispose of a pending case.

[¶31] Moreover, Rule 40(e) specifically provides that "[a]ssignment of a case to alternative dispute resolution shall not suspend any deadlines or cancel any hearings or trial." W.R.C.P. 40(e). Furthermore, a pretrial conference may be used to consider and take action with respect to "[s]ettlement and the use of special procedures to assist in resolving the dispute under Rule 40(b) or other alternative dispute resolution procedures." W.R.C.P. 16(c)(9). The approximately four weeks between the pretrial conference and trial were sufficient to allow the parties to hire a private mediator and complete mediation, and Bratton could have asked the court to enter an order to that effect, as counsel for Blenkinsop and the GAL evidently anticipated it would. Instead, he failed to comply with the scheduling order or to appear at the appointed time.

[¶32] Although some allowances are properly made for self-represented litigants in light of their lack of legal training and experience, courts should for the most part require them to reasonably adhere to court orders and rules of procedure in the same way that attorneys are expected to do. *Olsen v. Olsen*, 2013 WY 115, ¶¶ 7-8, 310 P.3d 888, 891 (Wyo. 2013); *Annis v. Beebe & Runyan Furniture Co.*, 685 P.2d 678, 680 (Wyo. 1984). We will apply that rule here. This is not a case in which a court was asked to read a pleading written by a lay person liberally to try to determine its meaning. Bratton ignored the scheduling orders in this case, which courts cannot tolerate.

[¶33] The district court acted well within the scope of its proper discretion. Its response was reasonable, in accordance with law, and fair in light of the efforts of counsel for Blenkinsop and the GAL.

**Petition to Disqualify the Presiding Judge for Cause**

[¶34] Bratton also claims that his petition to disqualify the judge presiding over the guardianship case was wrongly denied. We review that claim for an abuse of discretion as well. *Cordova v. Gosar*, 719 P.2d 625, 633 (Wyo. 1986). A party seeking to disqualify a judge for cause is required to present convincing evidence that the judge harbored such a personal prejudice or bias against him that he or she was unable to impartially base decisions on the law and the evidence. *TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1211 (Wyo. 1990).

[¶35] Bratton's petition for disqualification asserted that the presiding judge's disposition of his motions to compel mediation and to quash the proposed order of dismissal demonstrate his bias. He made a similar claim regarding statements made by the judge at a hearing on July 19, 2013, after Bratton leveled unsupported accusations that Blenkinsop's lawyer and the guardian ad litem were unethically colluding against him.

[¶36] The district judge who considered the disqualification petition correctly observed that in and of themselves, unfavorable rulings do not constitute evidence of bias, citing *TZ Land & Cattle*, 795 P.2d at 1211. He reviewed the transcript of the July 19 hearing, and he concluded that the challenged statements demonstrated no bias. He found instead that the presiding judge intended to caution Bratton that his unsupported accusations of misconduct against two officers of the court poorly served his cause, and that he would perhaps be better off if his ardent feelings were funneled through someone who could maintain objectivity and better appreciate the decorum required of counsel and litigants, *i.e.*, an attorney.

[¶37] We discussed Bratton's motions for mediation and to quash the proposed order of dismissal above. As noted there, the district court had ample reason to dismiss his petition and deny his outstanding motions, and Bratton offered no meaningful explanation for the conduct that led to those sanctions. No bias is reflected in those rulings, and the court's failure to expressly rule on the motions was a natural consequence of the decision to dismiss his petition. This Court also reviewed the transcript of the July 19 hearing and agrees with the assessment of the judge who denied the disqualification petition. The presiding judge listened attentively to the arguments presented, and he demonstrated no animus or bias against anyone. He simply tried to direct Bratton to a less perilous path. The petition for disqualification was properly denied.

## W.R.A.P. 10.05 Sanctions

[¶38] Blenkinsop asks us to certify Bratton had no reasonable cause for this appeal, and to award her costs and attorney fees she has expended under Rule 10.05 of the Wyoming Rules of Appellate Procedure. As she points out, such relief is generally appropriate— even against a self-represented appellant—if the issues raised are not supported by cogent argument or citation to pertinent authority and the record. *Baker v. Reed*, 965 P.2d 1153, 1154 (Wyo. 1998).

[¶39] By that standard, Bratton would certainly have earned the requested sanctions. However, Rule 10.05 sanctions are not usually levied when the appeal challenges discretionary rulings. *Russell v. Russell*, 948 P.2d 1351, 1356 (Wyo. 1997). This appeal focused on the discretionary decision to dismiss Bratton's petition and to deny all his pending motions. While Bratton's briefing left a great deal to be desired, we were able to conduct a meaningful review of the issues presented on the record we received. We therefore decline to certify that he had no reasonable cause for his appeal, and we deny the request for sanctions.

## CONCLUSION

[¶40]  The district court did not abuse its discretion in disposing of Bratton's motions to submit the case to mediation and to quash the proposed order as it did after properly dismissing his guardianship petition and temporarily appointing Blenkinsop as her brother William's guardian and conservator.

[¶41]  The district judge who denied Bratton's petition to disqualify the presiding judge likewise did not abuse his discretion.  We affirm in all respects, and we deny Blenkinsop's request for sanctions.