# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 32

### OCTOBER TERM, A.D. 2014

### February 27, 2015

IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF WILLIAM G.
BRATTON, Ward,

ROBERT E. BRATTON,

Appellant
(Petitioner),

v.                                                                    S-14-0130

JEANNE BLENKINSOP,

Appellee
(Respondent).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
    *Pro se.*

*Representing Appellee:*
    *Mary H. Reed, McCarty, Reed and Earhart, Attorneys at Law, LC, Cody, Wyoming.*

*Guardian Ad Litem:*
    *Dawn R. Scott, Attorney at Law, Cody, Wyoming.*

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Robert E. Bratton, acting *pro se*, challenges the district court's order transferring funds into a conservatorship account held for the benefit of the parties' brother.   The funds had previously been transferred by Mr. Bratton from an account held jointly with his sister, Jeanne Blenkinsop, Appellee, to an account held individually by Mr. Bratton.  He also contends the district court deprived him of due process by vacating a hearing on Ms. Blenkinsop's motion to release funds, and that the district court lacked authority to rule on the motion.  We affirm.

### *ISSUES*

[¶2]    Mr. Bratton presents four issues, which we combine and rephrase as follows:

1. Whether the district court erred by granting Ms. Blenkinsop's motion to release funds.

2. Whether the district court erred by vacating the initially scheduled hearing on Ms. Blenkinsop's motion to release funds.

3. Whether the district court had authority to rule on Ms. Blenkinsop's motion to release funds.

### *FACTS*

[¶3]    This matter began in June 2012, when Mr. Bratton petitioned for appointment as guardian of the parties' brother, William Bratton.  Ms. Blenkinsop cross-petitioned and asked that she be appointed as William's guardian and conservator.  After Mr. Bratton failed to appear at a pretrial conference, the district court dismissed his petition and appointed Ms. Blenkinsop as guardian for William.  We affirmed that decision in *Bratton v. Blenkinsop (In re Bratton)*, 2014 WY 87, 330 P.3d 248 (Wyo. 2014).

[¶4]    In July 2012, Mr. Bratton withdrew $10,000.00 from a bank account held jointly with Ms. Blenkinsop.  According to Ms. Blenkinsop, the account was originally held by the parties' mother, with William having the sole right of survivorship.  At some point, however, the parties' names were added to the account, which they held with William as joint tenants.  In 2011, the parties took steps to prevent William from accessing the account because he had fallen prey to financial "scammers" who target the elderly and infirm.  The $10,000.00 withdrawn by Mr. Bratton was transferred to an account bearing the name "William Bratton Guardian Legal Fund" held individually by Mr. Bratton.

[¶5]    In September 2012, Ms. Blenkinsop filed a motion to require Mr. Bratton to return

1

the funds. Following a hearing held on December 19, 2012, the court granted that motion and ordered Mr. Bratton to deposit the funds with the district court clerk. We dismissed Mr. Bratton's appeal from that order, finding that the district court's order was not a final, appealable order.

[¶6] Ms. Blenkinsop subsequently filed a motion to release the funds to a conservatorship account to be administered by Ms. Blenkinsop as conservator. A hearing on the motion was set for October 15, 2013. However, on September 30, Mr. Bratton filed a motion to recuse Judge Steven Cranfill, the presiding district court judge. Judge Cranfill assigned the motion to Judge Thomas Campbell, and Judge Campbell denied Mr. Bratton's petition for recusal. Judge Cranfill vacated the October hearing and rescheduled the hearing for December 6, 2013. Following the hearing, the court granted Ms. Blenkinsop's motion to transfer the $10,000.00 at issue into a conservatorship account. Mr. Bratton timely filed this appeal challenging the district court's order.

## DISCUSSION

[¶7] In Mr. Bratton's first issue, he contends the district court erred in ordering the release of the $10,000.00 to a conservatorship account held for the benefit of the parties' brother. We apply the following standard of review in guardianship matters: "We presume the district court's findings of fact are correct and will not set them aside unless the findings are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. Additionally, we review a district court's conclusions of law *de novo.*" *Utley v. Lankford (In re Lankford)*, 2013 WY 65, ¶ 14, 301 P.3d 1092, 1098 (Wyo. 2013) (quoting *In re DMW*, 2009 WY 106, ¶ 10, 214 P.3d 996, 998 (Wyo. 2009)). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court, after an examination of the entire record, is left with the definite and firm conviction that a mistake has been committed. *Utley*, ¶ 14, 301 P.3d at 1098.

[¶8] Mr. Bratton provides no legal authority relating to the rights conferred by joint ownership of assets.[1] Our precedent is clear, however, that the right to withdraw funds depends on the agreement or understanding of the parties:

> Mr. Dawes maintains that he was a joint owner of the

---

[1] Due to the inadequacies of Mr. Bratton's brief, including the lack of a standard of review and citation to authority, Ms. Blenkinsop requests that we certify that there was no reasonable cause for this appeal and award her costs and attorney fees under Rule 10.05 of the Wyoming Rules of Appellate Procedure. As in Mr. Bratton's original appeal, however, we conclude that although his brief leaves a great deal to be desired, we were able to conduct a meaningful review of the issues presented. Accordingly, we decline to certify that he had no reasonable cause for his appeal, and we deny the request for sanctions. *Bratton*, ¶ 39, 330 P.3d at 256.

2

account and could not, as a matter of law, be considered a bailee. 48A C.J.S. *Joint Tenancy* § 25 (2010) states:

> In general, the rights of the parties to joint bank accounts are to be determined by the rules of contract law, and in determining such rights the intention of the parties is controlling.
>
> [E]ach tenant acquires a joint interest in the bank account at the time of the creation of the joint tenancy. Ordinarily, either party to a joint account has the right during the lifetime of both parties to make such use of the joint account as is consistent with joint ownership. While each joint tenant is presumed to own an equal share in the joint bank account, this presumption is rebuttable.
>
> [W]here a joint account is opened in both names merely for convenience in making withdrawals and without the intent of creating any property interests, the rights of each joint tenant are not the same.
>
> Generally, each joint tenant of a joint tenancy bank account has the power to withdraw the whole, or any part of, the funds in the joint account. . . . [O]rdinarily a party to a joint bank account may appropriate to himself or herself all or part of the funds without liability to his or her co-depositor only where in fact and in law he or she is the real owner of the money . . . . [T]herefore, the right to withdraw funds from a joint account without accountability depends on the agreement or understanding of the parties.

(Footnotes omitted). Consistent with the general rules recited in the foregoing passage, this Court has recognized in civil cases that joint owners can agree among themselves as to the use of jointly owned property. *See, e.g., Sanders v. Sanders*, 2010 WY 77, ¶ 23, 234 P.3d 343, 350 (Wyo. 2010); *Parkhurst v. Boykin*, 2004 WY 90, ¶¶ 29-31, 94 P.3d 450, 462-63 (Wyo. 2004).

*Dawes v. State*, 2010 WY 113, ¶ 27, 236 P.3d 303, 309 (Wyo. 2010). We have stated that "the intent of the parties is paramount." *Sanders*, ¶ 23, 234 P.3d at 350.

3

[¶9] According to Mr. Bratton, "[t]he account from which the $10,000 . . . was transferred is an account shared only by the Appellant and the Appellee." He claims that "Brother William (Ward) has never, either by name or function, had any association with this account," and that, as a result, he was entitled to remove funds unilaterally from the joint account shared with Ms. Blenkinsop. Mr. Bratton also contends the district court erroneously relied on the statements of Ms. Blenkinsop's counsel, made at the hearing on the motion to return the funds, indicating that William's social security checks were deposited into the joint account. We find no merit in Mr. Bratton's arguments.

[¶10] First, we note that the statements made by Ms. Blenkinsop's counsel were corrected during that hearing. In response to questioning regarding William's social security checks, Ms. Blenkinsop acknowledged that those checks were automatically deposited into a different account. Accordingly, we find no basis to conclude that the district court relied on the statements of her counsel in ordering the return of the transferred funds. Rather, the district court appears to have relied on Mr. Bratton's own statements at the hearing indicating, contrary to his assertions in this appeal, that the funds held in the joint account were intended for the benefit of the parties' brother. Mr. Bratton stated as follows:

> It's my understanding that, thinking back on this, that when I realized the problem with [William], that he might give these funds away, that he signed over that thing and gifted those amounts, which meant at that point it went to [Ms. Blenkinsop] and myself and that account turned into a private account. Now, whether we want to use those funds for [William], which was, I think, generally, the intent, it wasn't specifically documented.

In light of Mr. Bratton's assertion that the funds were intended for the benefit of the parties' brother, we find no clear error in the district court's determination that Mr. Bratton's unilateral transfer of the funds to an account held in his name only was inconsistent with the parties' agreement as to the use of the jointly owned property. We affirm the district court's order granting release of the transferred funds to a conservatorship account.

[¶11] Mr. Bratton's remaining contentions are also unpersuasive. He claims, next, that the district court deprived him of due process by vacating the originally scheduled hearing on Ms. Blenkinsop's motion to release funds. As noted above, that hearing was vacated following Mr. Bratton's motion to recuse the presiding judge. Following the denial of Mr. Bratton's motion for recusal, the hearing was vacated and rescheduled. The hearing ultimately took place on December 6, 2013, and Mr. Bratton was provided the opportunity to present argument and evidence. Accordingly, we find no merit in Mr.

4

Bratton's claim that he was denied due process.

[¶12]   Finally, Mr. Bratton asserts that the district court did not have authority to rule on the motion to release funds because the presiding judge assigned the entire matter to a different judge following Mr. Bratton's motion for recusal.   Under Wyoming Rule of Civil Procedure 40.1(b)(2), a motion for disqualification "shall be heard by the presiding judge, or at the discretion of the presiding judge by another judge.   If the motion is granted, the presiding judge shall immediately call in another judge to try the action."   Because Mr. Bratton's motion was denied, transfer of the entire action was not required under W.R.C.P. 40.1.   Further, the record gives no indication that the assignment of Mr. Bratton's motion for recusal effected a transfer of the entire case to another district court judge.   Accordingly, we find no merit in Mr. Bratton's claim that the district court did not have authority to rule on the motion to release funds.

[¶13]   Affirmed.