# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 157

**OCTOBER TERM, A.D. 2015**

**December 29, 2015**

IN THE MATTER OF THE GUARDIANSHIP
AND CONSERVATORSHIP OF WILLIAM G.
BRATTON, Ward,

ROBERT E. BRATTON,

Appellant
(Petitioner),

v.                                                                    S-15-0076, S-15-0131, S-15-0132

JEANNE BLENKINSOP,

Appellee
(Respondent).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
    *Pro se.*

*Representing Appellee:*
    *Mary H. Reed, McCarty, Reed and Earhart, Attorneys at Law, LC, Cody,*
    *Wyoming.*

*Guardian Ad Litem:*
    *Dawn R. Scott, Bonner Law Firm, PC, Cody, Wyoming.*

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]     These three consolidated appeals arise in connection with the guardianship and conservatorship of William Bratton.  His brother, Appellant Robert Bratton, challenges the district court's acceptance of the Guardian's Second Report and the Conservator's First Annual Accounting filed by his sister, Appellee Jeanne Blenkinsop.  We will affirm and award reasonable costs and attorney's fees to Ms. Blenkinsop.

## ISSUES

[¶2]     The issues to be decided in this appeal are as follows:

  1.     Does Mr. Bratton[1] have standing to pursue these appeals?

  2.     Did the district court err in approving the Guardian's Second Report?

  3.     Did the district court err in denying Mr. Bratton's motion for additional time to respond to a decision letter approving the Guardian's Second Report?

  4.     Did the district court err in accepting the Conservator's First Annual Accounting?

  5.     Should Ms. Blenkinsop be awarded attorney's fees and costs under W.R.A.P. 10.05(b)?

## FACTS

[¶3]     On June 29, 2012, Mr. Bratton filed a petition to be appointed William Bratton's guardian.  Ms. Blenkinsop responded with a counter petition seeking to be appointed guardian and conservator.  Both asserted that William Bratton's mental disability rendered him unable to handle some of his personal and financial affairs, and that it would be in his best interests to have a guardian or a guardian and conservator appointed. The district court, on its own motion, appointed a guardian ad litem for William Bratton.

---

[1] In this opinion, we will refer to the Appellant, Robert Bratton, as Mr. Bratton.  We will refer to William Bratton by his full name or as the ward.

1

[¶4]   On September 9, 2013, the district court issued an order granting temporary guardianship and conservatorship to Ms. Blenkinsop.  It also dismissed Mr. Bratton's petition for guardianship as a sanction for his failure to attend a pretrial conference.  Mr. Bratton appealed.  We affirmed.  *Bratton v. Blenkinsop (In re Bratton)*, 2014 WY 87, ¶ 25, 330 P.3d 248, 253 (Wyo. 2014) ("*Bratton I*").

[¶5]   Before the district court appointed her as guardian and conservator, Ms. Blenkinsop filed a motion asserting that Mr. Bratton had removed $10,000 from an account established for William Bratton's benefit.  She asked the district court to order Mr. Bratton to return the money.  The district court granted the motion, and ordered Mr. Bratton to deposit the funds with the district court clerk.  After being appointed temporary guardian and conservator, Ms. Blenkinsop filed a motion to release the funds to a conservatorship account.  The district court granted the motion.  Mr. Bratton appealed, and we affirmed.  *Bratton v. Blenkinsop (In re Bratton)*, 2015 WY 32, ¶ 13, 344 P.3d 255, 259 (Wyo. 2015) ("*Bratton II*").

[¶6]   In the meantime, the district court converted Ms. Blenkinsop's temporary guardianship and conservatorship to permanent status.  On September 9, 2014, she filed a Guardian's Second Report[2] with the court.  In his response, Mr. Bratton asserted that the guardianship report was deficient in its reporting on William Bratton's dental and other health issues, his hygiene and the condition of his residence, and his finances.  The district court held a hearing to consider the objections.

[¶7]   On December 2, 2014, the district court issued a decision letter concluding that the guardian's report complied with the statutory requirements and should be accepted.  He asked counsel for Ms. Blenkinsop to draft an order and submit it to Mr. Bratton and the guardian ad litem for approval as to form.  On December 22, 2014, Ms. Blenkinsop filed notice with the court that she had sent the proposed order to Mr. Bratton by both mail and e-mail, but he had neither signed the proposed order nor stated any objections.  She asked the district court to approve the order pursuant to W.R.C.P. 58(a).

[¶8]   Mr. Bratton filed a motion for additional time to respond to the decision letter.  In this motion, he claimed that the decision letter had been issued on December 2, 2014, was mailed to him only on December 18, 2014, and was received by him on December 23, 2014.  He asked the district court to provide him "ample time to respond to all matters as outlined in the Court's December 2, 2014 letter of directives."  The district court denied

---

[2] Wyo. Stat. Ann. § 3-2-109 (LexisNexis 2013) requires a guardian to file a written report every six months reporting on "the physical condition, including level of disability or functional incapacity, principal residence, treatment, care and activities of the ward, as well as providing a description of those actions the guardian has taken on behalf of the ward."

his motion and entered the order ratifying and approving Ms. Blenkinsop's second guardianship report. Mr. Bratton challenges that ruling in Docket No. S-15-0076.

[¶9] On February 24, 2015, Ms. Blenkinsop filed a "Conservator's First Annual Accounting" in the district court.[3] Although Mr. Bratton filed no objections, he appeared by telephone at the hearing on the accounting. He raised a concern that the ward's "funds were nearly depleted." He also voiced a concern that Ms. Blenkinsop appeared to be using William Bratton's "social security and SSI money to pay for expenses incurred by the Berth[e] Bratton living trust."[4] Counsel for Ms. Blenkinsop countered that William Bratton's living expenses for the past year were "quite reasonable." She explained that William Bratton lived in a home owned by the Berthe Bratton trust, and she had used his funds to pay the property taxes on that home. She asserted that this was appropriate, as he lived in the home without paying rent. She also suggested that, to the extent William Bratton's conservatorship funds were nearly depleted, funds from the trust could be transferred to the conservatorship, although that was something "we may have to address with the Court in a different matter." The district court confirmed that transfers from the trust were a separate issue, and Mr. Bratton agreed.

[¶10] The district court issued an order confirming and approving the Conservator's First Annual Accounting. The order included the provision "that the Conservator shall, as necessary, manage the assets for the care, support, maintenance, and payments of obligations as they fall due for the benefit of the Ward." Mr. Bratton filed two separate notices of appeal from the district court's order. In Docket No. S-15-0131, he challenges the district court's approval of the conservator's report. In Docket No. S-15-0132, he asserts that the district court erred in requiring the Conservator to continue to manage William Bratton's assets for his benefit.

## DISCUSSION

### Standing

[¶11] When we consolidated these appeals, we asked the parties to provide briefing on the issue of standing. Because the question of standing is potentially dispositive, we

---

[3] Wyo. Stat. Ann. § 3-3-503(b)(ii) requires a conservator to submit "an annual report to the court having jurisdiction accounting for all money and property coming into his possession for the benefit of each ward and itemizing all disbursements made from the ward's assets." Wyo. Stat. Ann. §§ 3-3-901 and -902 establish additional requirements for the annual conservator's report.

[4] Although the record is not clear on this point, it appears that this is a trust established by these siblings' mother, meant in part, at least, to support William Bratton. *See Bratton I*, ¶ 3, 330 P.3d at 250.

3

address it first. "The existence of standing is a legal issue that we review *de novo*." *Northfork Citizens for Responsible Dev. v. Park County Bd. of County Comm'rs*, 2008 WY 88, ¶ 6, 189 P.3d 260, 262 (Wyo. 2008) (quoting *Halliburton Energy Services v. Gunter*, 2007 WY 151, ¶ 10, 167 P.3d 645, 649 (Wyo. 2007)).

[¶12] In *McNeel v. McNeel (In re McNeel)*, 2005 WY 36, ¶ 18, 109 P.3d 510, 516 (Wyo. 2005), we recognized that "Wyoming's statutory scheme for the voluntary appointment of a guardian/conservator contemplates that third-parties may participate in that process by taking appropriate action." However, we also indicated that only third-parties with standing were entitled to participate. *Id.*, ¶16, 109 P.3d at 514-15. We concluded that Ms. McNeel had standing in her husband's guardianship and conservatorship proceeding because she was "properly situated with sufficient pecuniary, personal, and tangible interests at stake given the pending Divorce Action." *Id.*, ¶ 17, 109 P.3d at 515. It was in light of *McNeel* that we asked the parties to address the question of Mr. Bratton's standing in this case.

[¶13] In 2013, the Wyoming legislature passed the Uniform Adult Guardianship Jurisdiction Act. This Act includes a provision, codified as Wyo. Stat. Ann. § 3-1-102(b), stating that in guardianship or conservatorship proceedings "concerning an adult, the provisions of chapter 8 of this title shall apply." 2013 Wyo. Sess. Laws ch. 21, § 2. Chapter 8 includes a provision, codified as Wyo. Stat. Ann. § 3-8-102(a)(vii), defining the term party as "the respondent, petitioner, guardian, conservator or any other person allowed by the court to participate in a guardianship or protective proceeding." 2013 Wyo. Sess. Laws ch. 21, § 1.

[¶14] In their briefing on standing, none of the parties addressed these statutory provisions, their application in this case, or their effect, if any, on our discussion of standing in *McNeel*. However, under the circumstances presented here, it was not unreasonable for the district court to allow Mr. Bratton to participate as a party in these proceedings. Mr. Bratton had standing in *Bratton I*, ¶ 1, 330 P.3d at 250, because he had a personal stake in the question of whether he or Ms. Blenkinsop would be appointed as their brother's guardian. He had standing in *Bratton II*, ¶ 1, 344 P.3d at 256, because he had a tangible interest in the money he had been ordered to deposit with the court clerk. Mr. Bratton may have a continuing pecuniary interest in these proceedings.[5]

---

[5] At the hearing on his objections to the first annual conservator's report, Mr. Bratton commented on the trust that helped support his brother. As he told the district court, "When mother set that trust up it – some people are under the impression it was for [William Bratton's] benefit, but it was for all her kids and all her grandchildren." If Mr. Bratton is one of the beneficiaries of this trust, this might be a sufficient pecuniary interest to establish standing as defined in *McNeel*. We are unable to make that determination with the rather sparse record before us now.

[¶15] More significantly, Wyo. Stat. Ann. § 3-1-111 authorizes "[a]ny person" to file a complaint alleging that a "guardian or conservator is not properly discharging his duties." Mr. Bratton presented his concerns in the form of objections to the guardian's and conservator's reports, but in substance they are allegations that Ms. Blenkinsop is not properly discharging her duties as guardian and conservator. The fact that Mr. Bratton would be statutorily authorized to file a complaint raising such allegations is a further indication that it was not unreasonable for the district court to allow Mr. Bratton to participate as a party. Thus, pursuant to Wyo. Stat. Ann. § 3-8-102(a)(vii), Mr. Bratton is a party to these proceedings, and we conclude that he has standing.[6]

### *Guardian's Second Report*

[¶16] Mr. Bratton challenges the approval of the Guardian's Second Report. In *Bratton II*, ¶ 7, 344 P.3d at 257, we said:

> We apply the following standard of review in guardianship matters: "We presume the district court's findings of fact are correct and will not set them aside unless the findings are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence. Additionally, we review a district court's conclusions of law *de novo*." *Utley v. Lankford (In re Lankford)*, 2013 WY 65, ¶ 14, 301 P.3d 1092, 1098 (Wyo. 2013) (quoting *In re DMW*, 2009 WY 106, ¶ 10, 214 P.3d 996, 998 (Wyo. 2009)).

[¶17] Appended to Mr. Bratton's objection to the Guardian's Second Report were photographs of the interior of the home where William Bratton lives, three taken in October of 2012 and three taken in September of 2014. He contended that these photographs showed there had been "no change in the [sanitary] living conditions" and Ms. Blenkinsop had made "no attempt to improve the sanitary living conditions of [William Bratton.]" On appeal, he contends that the photographs show that the ward "continues to live in squalor," and complains that the district court "had no comment" on the photographs. He contends that the district court's failure to respond to the photographs "demonstrates bias and prejudice."

---

[6] Although we have concluded that Mr. Bratton has standing in this case, that determination does not establish standing for Mr. Bratton in future proceedings. It is not at all clear that he has a sufficient pecuniary, personal, or tangible interest that would convey standing regardless of the type of future proceeding.

5

[¶18] Mr. Bratton has offered no authority indicating that the district court had a duty to comment on or respond to the photographs. Significantly, although the photographs were mentioned in the hearing regarding the Guardian's Second Report, they were never offered or accepted into evidence. In addition, Mr. Bratton made no request pursuant to W.R.C.P. 52(a) for the district court to state its findings of fact.

[¶19] We interpret Mr. Bratton's claim as a request for us to reweigh the evidence. However, it is "within the district court's province to weigh the evidence and judge the credibility of the witnesses." *Dahlke v. Dahlke*, 2015 WY 76, ¶ 18, 351 P.3d 937, 942-43 (Wyo. 2015) (quoting *In re Adoption of ADA*, 2006 WY 49, ¶ 18, 132 P.3d 196, 203 (Wyo. 2006)). This Court "does not reweigh evidence." *Walter v. Walter*, 2015 WY 53, ¶ 11, 346 P.3d 961, 965 (Wyo. 2015).

[¶20] Moreover, we note that the district court received evidence contrary to Mr. Bratton's claims about William Bratton's living conditions. When Ms. Blenkinsop testified, she was asked about the photographs, and conceded that the condition of William Bratton's home had been a concern of hers. She explained, however, that her brother "responds in a negative fashion" to having people in his home to clean, and especially to having his things "touched or moved or taken out." She then explained her efforts to help William Bratton "make more progress" with regard to the conditions in his home. These efforts included having William Bratton work with a "new person," a "pastor" who "has a very nice way of convincing Bill" to clear out "some of his stuff." She testified that these efforts had already proven successful in cleaning up the backyard of William Bratton's home.

[¶21] In approving the Guardian's Second Report, the district court implicitly found that William Bratton was not living in unacceptable conditions, and that Ms. Blenkinsop was making appropriate efforts to help improve his living conditions. These findings are not inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence, and provide us with no reason to reverse the district court's decision.

[¶22] Mr. Bratton's second contention with regard to the Guardian's Second Report is that the district court improperly denied his motion for additional time to respond to a decision letter. He claims that W.R.C.P. 58 provides him a right to respond to the decision letter. He further asserts that the district court's denial of this opportunity was a violation of his civil rights.

[¶23] His reliance on W.R.C.P. 58 is misplaced. This rule provides an opportunity to object "to the form or content of a proposed judgment or order." It does not apply to decision letters. We will not consider his vague civil rights claim because he has provided no authority and no cogent argument to support it.

### *Conservator's First Annual Accounting*

[¶24] In considering the district court's approval of the Conservator's First Annual Accounting, we apply the same standard of review we used with regard to the Guardian's Second Report. Mr. Bratton's first claim about the district court's approval of the Conservator's First Annual Accounting is that Ms. Blenkinsop has "used financial resources of Ward William Bratton to pay her personal tax burden with the Federal Internal Revenue Service." On appeal, he says he "would like to offer up to the Court as evidence, stipulated to or agreed to by [Ms. Blenkinsop], audio voice recordings of messages left on [his] telephone answering machine."

[¶25] The evidence offered by Mr. Bratton was not presented to the district court and is not contained in the record on appeal. There is no indication that it was inadvertently omitted from the appellate record. Ms. Blenkinsop has not stipulated that the evidence can be considered by this Court. In light of Mr. Bratton's failure to produce this evidence in district court, we cannot consider this issue on appeal.

[¶26] His next claim is that the district court erred by including in its order approving the Conservator's First Annual Accounting a directive "that the Conservator shall, as necessary, manage the assets for the care, support, maintenance, and payments of obligations as they fall due for the benefit of the Ward." His assertion is that this represents "blatant attempts" by Ms. Blenkinsop and her counsel "to re-interpret a sound legal trust document created by our mother before her death, the Berthe Bratton Living Trust." He declares that the district court's order improperly allows Ms. Blenkinsop unilaterally to withdraw assets from the trust.

[¶27] His argument misses the mark widely. The district court's order explicitly applies to the assets of the conservatorship. It does not apply to the assets of his mother's trust, and it does not allow Ms. Blenkinsop to make unilateral withdrawals from that trust. Moreover, the order is entirely consistent with the conservator's statutory authority to "protect and preserve [the estate], invest it prudently, account for it as provided in the Wyoming statutes, expend it for the benefit of the ward and perform all other duties required by law." Wyo. Stat. Ann. § 3-3-601. Mr. Bratton's misinterpretation of the district court's order provides no basis for us to reverse it.

[¶28] Next, Mr. Bratton asks the Court to consider imposing sanctions against Ms. Blenkinsop's counsel. He contends that it was improper for her to include the language just discussed in her proposed order. We have rejected his argument that this language was improper, and will not consider imposing such sanctions.

[¶29] Finally, he claims that William Bratton's guardian ad litem has not adequately

performed her duties and responsibilities. He asserts that we should impose sanctions against her "for her inability in perform [sic] her legal responsibilities to protect the rights of Ward William Bratton." We will not consider this argument, as it is entirely lacking in citations to relevant authority or cogent argument.

***Attorney's Fees***

[¶30] Ms. Blenkinsop claims that there was no reasonable cause for these appeals. She requests that we award her reasonable costs and attorney's fees pursuant to W.R.A.P. 10.05(b). We agree that an award of attorney's fees is appropriate.

[¶31] In *Bratton I*, ¶ 39, 330 P.3d at 256, we said: "While Bratton's briefing left a great deal to be desired, we were able to conduct a meaningful review of the issues presented on the record we received. We therefore decline to certify that he had no reasonable cause for his appeal, and we deny the request for sanctions." In *Bratton II*, ¶ 8 n.1, 344 P.3d at 258 n.1 we wrote:

> Due to the inadequacies of Mr. Bratton's brief, including the lack of a standard of review and citation to authority, Ms. Blenkinsop requests that we certify that there was no reasonable cause for this appeal and award her costs and attorney fees under Rule 10.05 of the Wyoming Rules of Appellate Procedure. As in Mr. Bratton's original appeal, however, we conclude that although his brief leaves a great deal to be desired, we were able to conduct a meaningful review of the issues presented. Accordingly, we decline to certify that he had no reasonable cause for his appeal, and we deny the request for sanctions.

[¶32] In the appeals before us now, we reach a different conclusion. Once again, Mr. Bratton's briefing is inadequate due to his failure to cite legal authority sufficient to support his arguments and his failure to set forth standards of review. Many of his issues were not supported by cogent argument, and his arguments on other issues are only marginally better. All of them are lacking in legal merit. We therefore certify that there was no reasonable cause for these appeals, and award reasonable attorney's fees and costs to Ms. Blenkinsop.

[¶33] In conclusion, we affirm the district court's decisions accepting the Guardian's Second Report and the Conservator's First Annual Accounting. We also award reasonable attorney's fees and costs to Ms. Blenkinsop. Ms. Blenkinsop shall submit to the Court statements of attorney's fees and costs incurred in these appeals so that we can determine an appropriate award.